SHORELINE CARE LIMITED PARTNERSHIP *v.*
TOWN OF NORTH BRANFORD ET AL.
(14961)

PETERS, C. J., and BORDEN, BERDON, NORCOTT and PALMER, Js.

Argued September 23—decision released November 22, 1994

*Lawrence C. Sgrignari,* for the appellants (defendants).

*John W. Barnett,* for the appellee (plaintiff).

BERDON, J. This is an appeal from a sewer benefit assessment levied against property in North Branford owned by the plaintiff, Shoreline Care Limited Partnership (Shoreline). Shoreline commenced this appeal after the defendants, the town of North Branford and the North Branford Water Pollution Control Authority (collectively North Branford), assessed Shoreline $148,755 in "benefit assessments" pursuant to Gen-

eral Statutes § 7-249.[1] Shoreline appealed to the Superior Court pursuant to General Statutes § 7-250.[2] The trial court rendered judgment for Shoreline, concluding that Shoreline had proved that North Branford had conferred no sewer benefits on Shoreline and that the "benefit assessment" therefore was invalid. North Branford appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We disagree with the trial court's conclusion that Shoreline carried its burden of proving the invalidity of the assessment, and therefore reverse the judgment of the trial court.

---

[1] General Statutes § 7-249 provides in relevant part: "ASSESSMENT OF BENEFITS. At any time after a municipality, by its water pollution control authority, has acquired or constructed, a sewerage system or portion thereof, the water pollution control authority may levy benefit assessments upon the lands and buildings in the municipality which, in its judgment, are especially benefitted thereby, whether they abut on such sewerage system or not, and upon the owners of such land and buildings, according to such rule as the water pollution control authority adopts, subject to the right of appeal as hereinafter provided. Benefits to buildings or structures constructed or expanded after the initial assessment may be assessed as if the new or expanded buildings or structures had existed at the time of the initial assessment. . . . The sum of initial and subsequent assessments shall not exceed the special benefit accruing to the property. . . . Revenue from the assessment of benefits shall be used solely for the acquisition or construction of the sewerage system providing such benefits or for the payment of principal of and interest on bonds or notes issued to finance such acquisition or construction. No assessment shall be made against any property in excess of the special benefit to accrue to such property. . . ."

[2] General Statutes § 7-250 provides in relevant part: "Any person aggrieved by any assessment may appeal to the superior court for the judicial district wherein the property is located and shall bring any such appeal to a return day of said court not less than twelve nor more than thirty days after service thereof and such appeal shall be privileged in respect to its assignment for trial. Said court may appoint a state referee to appraise the benefits to such property and to make a report of his doings to the court. The judgment of said court, either confirming or altering such assessment, shall be final. No such appeal shall stay proceedings for the collection of the particular assessment upon which the appeal is predicated but the appellant shall be reimbursed for any overpayments made if, as a result of such appeal, his assessment is reduced."

The essential facts of the case are undisputed. Shoreline owns and operates Evergreen Woods (Evergreen), a continuing care center on approximately eighty-eight acres in the town of North Branford. Evergreen includes residential living units, a nursing facility and other buildings. When Shoreline decided to develop Evergreen, it approached North Branford officials with concerns about how to service the sewerage needs for the property.

North Branford, as a result of its topography, has no sewage treatment plant of its own. Instead, it has divided the town into three sewerage districts, designated "A," "B" and "C." In each district the town has constructed sewer pipes to carry waste generated by the district to a different neighboring town. The sewer pipes in district A, for example, lead to the town of Branford's sewage treatment plant, in accordance with an agreement between North Branford and Branford. The agreement allows North Branford to discharge up to 665,000 gallons of waste each day into the Branford sewerage system. Pursuant to § 7-249, North Branford charges property owners in district A a "benefit assessment" of $1055 per unit,[3] which allows the town to recoup at least a portion of the costs of providing sewers and access to the Branford sewage treatment plant for that district.

Although the site for Evergreen is located in district A, the nearest available sewer pipe was located some distance away from the property. In fact, at least six separate parcels of property separated Shoreline from the sewer pipe. Rather than trying to purchase sewer easements from the property owners or seeking to have the town's water pollution control author-

___

[3] The North Branford Sewer Authority regulations define the number of "units" by the type and size of the property. One residential dwelling, for example, comprises one sewer unit.

ity exercise its statutory power of eminent domain to acquire the easements,[4] Shoreline decided to build its own sewer lines and pumping station for the property and connect them directly to Branford's sewer system,[5] at no out-of-pocket cost to North Branford. Under North Branford's sewer regulations, however, Shoreline needed North Branford's permission to connect to Branford.

In September, 1989, North Branford gave its permission in a contract it entered into with Shoreline. The effect of the contract was to allow Shoreline to pipe its sewage directly to Branford, but that any such sewage would reduce North Branford's 665,000 gallon daily sewage limit accordingly.[6]

Seven months later, in April, 1990, Shoreline entered into a contract with the town of Branford that allowed Evergreen to connect its private sewer system to that town's sewers. That agreement expressly provided that

[4] General Statutes § 7-247 authorizes a water pollution control authority to "enter upon and take and hold by purchase, condemnation or otherwise the whole or any part of any real property or interest therein which it determines is necessary or desirable for use in connection with any sewerage system."

[5] Shoreline eventually was able to connect to the Branford system by placing its sewer lines in the public highway known as Route 1 and giving ownership of that line to Branford.

[6] The contract also provided in part as follows: "3. That [North Branford] shall recover from said property a special connection fee of $1055.00 per unit subject to the right of [Shoreline] to appeal the assessment, as defined in the [North Branford regulations]; and . . . 8. [Shoreline] acknowledge[s] that the 'special benefits' accruing to the property by connection to the sanitary sewer system of . . . North Branford is at the value of at least $1055 per unit . . . 9. [Shoreline] shall pay the amounts due under Paragraph 3 of this Agreement to [North Branford] in 10 annual payments, each consisting of $1055.00 per unit per year plus interest on the unpaid portion at the rate of 10.87% per annum. [Shoreline] shall commence making payments to the Town for the 'special benefits' accruing to the property upon notice of assessment by the Town for each of said units subsequent to issuance of a Building Permit and a Sanitary Sewer Connection Permit for each dwelling unit . . . ."

"[t]here will be no inspection fees, connection charges or sewer use assessments imposed upon Shoreline" by Branford. Shoreline, at a cost of $445,000, constructed its sewer system and connected it to that of Branford.

In March, 1992, North Branford levied on Shoreline a sewer benefit assessment of $148,755, reflecting a charge of $1055 for each of the 141 units that had been built at Evergreen. Shoreline appealed the legality of the assessment to the trial court, arguing that because Shoreline had built its own $445,000 sewer system at no cost to North Branford and was piping its effluent directly to Branford, Shoreline received no sewerage "benefit" from North Branford.[7] The trial court held that Shoreline had sustained its burden of proof because "the town did not incur any cost to construct or acquire a sewerage system in the [Evergreen] complex on Shoreline's property in North Branford," and rendered judgment for Shoreline. In other words, the trial court held that since North Branford had incurred no out-of-pocket costs, there was no benefit to Shoreline for which the town could levy a benefit assessment under § 7-249. We disagree.[8]

[7] Shoreline alleged in two additional counts that: (a) to the extent the $148,755 charge was a "special connection fee," it was invalid; and (b) to the extent that the charge was a connection fee allowed under General Statutes § 7-255, North Branford failed to follow the necessary procedural requirements of that section. Although the trial court purported to render judgment for Shoreline on all three counts, it limited its discussion in its memorandum of decision to the benefit assessment issue. Moreover, Shoreline acknowledged in its brief to this court that "it is clear that the town was making a sewer benefit assessment under § 7-249 of the General Statutes and was not proceeding to levy connection charges under § 7-255 of the General Statutes or seeking any other remedy." Accordingly, we treat the case before us as involving only the levy of a benefit assessment under § 7-249.

[8] North Branford also challenged on appeal the trial court's denial of the town's motion to dismiss. The town had argued that the September, 1989 contract between the parties, and particularly paragraph three, provided that North Branford Sewer Authority regulations defined the sole appeal procedure for Shoreline in a dispute over the benefit assessment. Because

North Branford derives its power to levy sewer benefit assessments directly from § 7-249, which provides in relevant part that it "may levy benefit assessments upon the lands and buildings in the municipality which, in its judgment, are especially benefitted thereby, whether they abut on such sewerage system or not . . . . Benefits to buildings or structures constructed or expanded after the initial assessment may be assessed as if the new or expanded buildings or structures had existed at the time of the initial assessment. . . . The sum of initial and subsequent assessments shall not exceed the special benefit accruing to the property. . . . No assessment shall be made against any property in excess of the special benefit to accrue to such property." As the trial court correctly recognized, there is a presumption as to the regularity, validity and correctness of a special benefit assessment that imposes the burden of proof on the property owner challenging the assessment. See *Tower Business Park Associates No. 1 Ltd. Partnership* v. *Water Pollution Control Authority,* 213 Conn. 112, 117, 566 A.2d 696 (1989); *Katz* v. *West Hartford,* 191 Conn. 594, 602, 469 A.2d 410 (1983); *Anderson* v. *Litchfield,* 4 Conn. App. 24, 28, 492 A.2d 210 (1985).

In *Katz* v. *West Hartford,* supra, 191 Conn. 594, this court discussed the purpose and effect of such assessments.[9] "Special assessments for local improvements,

the regulations did not provide for an appeal to the Superior Court, the town argued, the court lacked subject matter jurisdiction over the case.

We conclude that the trial court's finding that the phrase, "as defined in the North Branford Sewer Authority regulations" in paragraph three of the contract modifies the word "assessment" and not "appeal," is not clearly erroneous. Accordingly, without deciding whether parties to a contract can oust a court of subject matter jurisdiction, we find there is no factual basis for North Branford's claim.

[9] Although *Katz* was decided in the context of benefit assessments for the construction of public roads, that analysis is equally applicable to assessments levied under § 7-249. See *Tower Business Park Associates No. 1 Ltd. Partnership* v. *Water Pollution Control Authority,* supra, 213 Conn. 117.

although bottomed on the taxing power, are based on the principle of special benefit to property. It is a local assessment imposed occasionally, as required, upon a limited class of persons interested in a local improvement; who are assumed to be benefitted by the improvement to the extent of the assessment . . . . *Bridgeport* v. *New York & N.H. R. Co.,* 36 Conn. 255, 262–63 (1869). The demand for the special contribution is justified by the fact that those who are to make it, while they are made to bear the cost of the public work, are supposed to suffer no pecuniary loss thereby, because their property is increased in value to an amount at least equal to the sum they are required to pay. 2 Cooley on Taxation (3d Ed.) 1153; 1 Page & Jones, Taxation by Assessment §§ 35, 39. *Whitmore* v. *Hartford,* 96 Conn. 511, 524, 114 A. 686 (1921); *Vaill* v. *Sewer Commission,* 168 Conn. 514, 518, 362 A.2d 885 (1975)." (Internal quotation marks omitted.) *Katz* v. *West Hartford,* supra, 602–603.

The benefit to a property owner is measured solely according to the amount by which the improvement causes the property to increase in market value. *Cyr* v. *Coventry,* 216 Conn. 436, 442–43, 582 A.2d 452 (1990); *Tower Business Park Associates No. 1 Ltd. Partnership* v. *Water Pollution Control Authority,* supra, 213 Conn. 117; see *Katz* v. *West Hartford,* supra, 191 Conn. 602–603. Under § 7-249, " '[t]he monetary value of the special benefit conferred upon a piece of property by the presence of a sewerage system must be calculated by the difference between the market value of the realty with and without the sewerage system . . . .' " *Tower Business Park Associates No. 1 Ltd. Partnership* v. *Water Pollution Control Authority,* supra, 118, quoting *Bridge Street Associates* v. *Water Pollution Control Authority,* 15 Conn. App. 140, 144, 543 A.2d 1351 (1988); see *Cyr* v. *Coventry,* supra, 442–43. Indeed, a property need not be connected to the sys-

tem in order for it to receive a benefit. If the property has increased in market value merely by virtue of its access to town sewers, it has received a benefit for which an assessment may be levied. Section 7-249 expressly recognizes this fact by allowing assessments to be made even against property owners who do not "abut" the system.

Accordingly, the cost that a town incurs in providing access to sewers is not dispositive in determining the amount of the benefit to the property. Indeed, in any given situation, the cost the town incurs in installing a sewer system may exceed the sum of the benefit assessments it collects from property owners affected by the system. In such a case, this may "mean that the cost of the sewerage system cannot be fully recouped by the town." *Bridge Street Associates* v. *Water Pollution Control Authority,* supra, 15 Conn. App. 144.[10] Similarly, the costs, if any, that a property owner may incur to connect to an existing sewer system are only relevant insofar as they may affect the market value of the property. See *Park City Yacht Club* v. *Bridgeport,* 81 Conn. 76, 82, 70 A. 631 (1908) (holding that the measure of a benefit should be "the whole effect" on market value, "and this result must be reached by weighing the facts tending to show an injury, as well as those tending to show a special benefit"); 14 E. McQuillin, Municipal Corporations (3d Ed. 1987)

---

[10] Nor is a property's actual use of a sewer system determinative of the benefit it has received from the system. Indeed, as we noted in *Tower Business Park Associates No. 1 Ltd. Partnership* v. *Water Pollution Control Authority,* supra, 213 Conn. 119, "[m]any authorities have rejected current actual use as a determinative factor in the assessment of benefits, since it often is unrelated to market value and fails to reflect the increase in market value resulting from the installation of sewers." In addition, counsel for both parties conceded during oral argument in this court that a person who decided to build a residential home in district A and chose to install a septic tank, rather than connect to the town sewerage system, would nevertheless be liable for a benefit assessment.

§ 38.33.10, p. 152 ("distance the property is situated from the improvement may be considered in measuring special benefits").

Therefore, in order to overcome the presumption of validity of the benefit assessment, a property owner must introduce competent evidence that the assessment is greater than the increase in market value to the property caused by the improvement.[11] See, e.g., *Cyr* v. *Coventry,* supra, 216 Conn. 442–43; *Tower Business Park Associates No. 1 Ltd. Partnership* v. *Water Pollution Control Authority,* supra, 213 Conn. 117; see also *Katz* v. *West Hartford,* supra, 191 Conn. 602–603. A determination of whether a benefit exists under § 7-249 and the amount of that benefit on appeal is a question of fact for the trial court, which we will not disturb unless it is clearly erroneous. *Tower Business Park Associates No. 1 Ltd. Partnership* v. *Water Pollution Control Authority,* supra, 120; *Bridge Street Associates* v. *Water Pollution Control Authority,* supra, 15 Conn. App. 147.

The assessment levied by North Branford was based on Shoreline's ownership of property in sewerage district A and Shoreline's access to that sewerage system. In order for Shoreline to have sustained its burden of proof that the benefit assessment was excessive, it was required to establish that the increase in *market value* to its property as a result of that access was less than the $148,755 benefit assessment. Indeed, for this court to sustain the trial court's judgment of no benefit,

---

[11] Shoreline's reliance on this court's opinion in *Windham Heights Associates* v. *Windham,* 179 Conn. 229, 425 A.2d 1267 (1979), is misplaced. The assessment in *Windham Heights Associates* was invalidated for two reasons, neither of which supports Shoreline's claim that if there is no out-of-pocket cost to the town a benefit cannot be assessed. *Windham Heights Associates* invalidated the assessment because the evidence demonstrated that the sewer did not enhance the value of the property and because the assessment was based solely on recouping the costs of the sewer lines.

Shoreline was required to establish that its property had not appreciated at all. Shoreline, however, offered no evidence of this type. Instead, it merely presented evidence of the absence of *cost* to North Branford when Shoreline had built its sewerage system to connect directly to Branford. Such a showing was insufficient to rebut the presumption of validity that attaches to municipal benefit assessments. See *Cyr* v. *Coventry,* supra, 216 Conn. 443. We conclude, therefore, that the trial court improperly determined that Shoreline had carried its burden of proving the invalidity of the benefit assessment.

Moreover, Shoreline had agreed when it entered into the contract with North Branford in 1989 that its property was receiving a benefit.[12] Paragraph eight of the contract states that "[Shoreline] acknowledge[s] that the 'special benefits' accruing to the property by connection to the sanitary sewer system of the Town of North Branford is at the value of at least $1055 per unit . . . ." Shoreline argues in its brief that the reason for having such a clause is uncertain. Shoreline's counsel suggested at oral argument that the only rational explanation was that the clause was inserted "in case this agreement with Branford was not finally realized." It seems more likely, however, that the reference to *North Branford,* rather than *Branford,* was a mere scrivener's error, and that both parties intended the clause as an acknowledgment by Shoreline that its property was presumptively benefitted by the availability of sewers in the amount of $1055 per unit, or $148,755 for 141 units. Indeed, the plain language of the agreement shows that it was predicated wholly on

---

[12] Although the trial court found that there was no evidence of how much effluent would be generated from Evergreen's 141 units, it is clear that whatever the actual amount, it would reduce the 665,000 gallon daily limit that North Branford could discharge into the Branford system.

Shoreline's direct connection to the Branford system.[13] There is no basis to support Shoreline's argument that the clause was inserted into the contract merely as an alternative that neither party contemplated in the agreement.

The judgment is reversed and the case is remanded to the trial court with direction to render judgment for the defendants.

In this opinion the other justices concurred.

---

[13] For example, the contract recitals state that Shoreline's sewers will be "discharging to Town of Branford sanitary sewers"; that the discharge "shall be directly to the Town of Branford"; and that the agreement was needed "to allow [Shoreline] to connect the sanitary sewers of the Development with the Town of North Branford into the Town of Branford sanitary sewer system."