[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In these cases, each of the plaintiffs is appealing, under the provisions of General Statutes Sec. 7-250, from a sewer-benefits assessment the defendant levied, under the provisions of General Statutes Sec. 7-249. The complaint in each case sets forth the same grounds for the appeal, both cases were heard at the same time, the brief of counsel for the plaintiffs applies to both cases, and this memorandum of decision applies to both cases.
At the beginning of the hearing, the parties offered into evidence a stipulation concerning certain facts that were not contested. The court admitted the stipulation as Court's Exhibit No. 1. Many of the facts that the court refers to in this memorandum of decision appear in that stipulation. The court hereby incorporates Court's Exhibit No. 1 in its entirety into this memorandum of decision.
 I
On July 14, 1988, the Stafford Town Meeting accepted a street known as Middle River Drive, and on August 4, 1988, the Stafford Selectmen accepted the street. On October 5, 1988, the plaintiffs Goepfert purchased a parcel of land (the Goepfert parcel) on Middle River Drive, and on June 28, 1989, the plaintiffs Morin purchased a parcel of land (the Morin parcel) on the same street.
The Goepfert parcel and the Morin parcel were taken from a larger tract that was included in an economic development program of the State of Connecticut. On June 21, 1988, in connection with that economic development program, the State of Connecticut granted Stafford $100,000 for the installation of sewers on Middle River Drive. The Public Works Department of Stafford installed those sewers during 1988 and 1989 at a cost of approximately $74,460. Because Stafford had received the $100,000 as a grant from the State, Stafford did not intend to, and did not, assess benefits as an incident to constructing the Middle River Drive sewers. In 1989, although construction of the Middle River Drive sewer was finished, the plaintiffs knew they could not use that sewer then, because that sewer was not then connected to the Stafford sewer system. The plaintiffs expected, however, that the Middle River Drive sewer would become operational later when it would be connected to a new sewer in the Stafford sewer system, to be constructed along Route 190.
On June 30, 1988, the Stafford Town Meeting had appropriated $3,330,000 for extending sewers along Route 190 (the Route 190 project). Middle River Drive was not included in either the plan or the description of the Route 190 project; the cost of the Middle River Drive sewer project CT Page 10844 was not included in the cost of the Route 190 project; and the surplus remaining from the Middle River Drive sewer project was not included as a credit toward the cost of the Route 190 project. The Town Meeting also authorized the Water Pollution Control Authority (WPCA) to construct the Route 190 project.
 II
Late in 1990, the Middle River Drive sewer was connected to the Route 190 project sewer, and the plaintiffs were then able to use the Middle River Drive sewer. On April 1, 1993, WPCA held a public hearing "to consider the levying of benefit assessments upon those properties specially benefited by the construction of the Stafford sewerage system." The notice of the public hearing referred to a "copy of the proposed assessments" on file with the Stafford Town Clerk. The "proposed assessments" include, as permitted by the provisions of General Statutes Sec. 7-249, assessments on lands benefited, "whether they abut on such sewerage sysytem [system] or not." On April 15, 1993, WCPA published the final assessments, which include a benefits assessment against the Goepfert parcel in the amount of $40,837.50 and the Morin parcel in the amount of $20,837.50. Counsel for the plaintiffs agreed that these two benefits assessments do not exceed the benefits to the properties assessed and that WCPA accurately computed the share of the cost of the Route 190 project that should be allocated to the plaintiffs' properties.
 III
Article VIII, Section 6, of the Stafford Sewer Ordinance provides, "It shall be the duty of the Sewer Commission, following the passage of the resolution and final action on approval of funds therefor, to have a caveat or caveats warning of the adoption of such resolution prepared and recorded on the Town land records on the properties to be served by the sewers and attested therefor, within ninety days after the start of construction." Our Supreme Court said, in Hartford Federal Savings Loanv. Lenczyk 153 Conn. 457, 463, 217 A.2d 694 (1966), that a sewer assessment caveat is not a lien but "merely a warning that a right to perfect a lien" would come into existence when the sewer project is completed. This "warning" is intended to inform and notify persons who contemplate buying, or granting credit on the security of, land that the caveat applies to. The caveat warns that the owner of the land will be liable for the payment of sewer assessments; that any unpaid assessment shall "constitute a lien upon the land," and that that lien may be "recorded . . . in the manner provided by the general statutes for . . . recording . . . property tax liens." General Statutes Sec. 7-254. To be effective as a warning, the caveat must, of course, be recorded on the CT Page 10845 land records, as required by the ordinance. "It is the policy of our law that all interests in land shall, as far as practicable, appear on the land records so that they may be easily and accurately traced." Hawley v.McCabe, 117 Conn. 558, 564, 169 A. 192 (1933). "The maintenance of the effectiveness of our registry system requires that one who relies in good faith upon a record title apparently complete shall be protected against any claimed interests not appearing of record, of which he has no notice." Ibid.
 IV
Even though no plaintiffs claim to have purchased their land more than ninety days after the start of construction of the Route 190 project, the plaintiffs contend that the assessments against their land are void, because the defendant did not file the caveat within, as required by Article VIII, Section 6 of the Stafford Sewer Ordinance, "ninety days after the start of construction." In support of their contention, the plaintiffs cite the following statement in Trivalent Realty Co. v.Westport, 2 Conn. App. 213, 218, 477 A.2d 140 (1984): "[I]n levying special assessments . . . due observance of all mandatory and jurisdictional provisions of the applicable law is indispensable. All limitations express or implied therein must be strictly observed. If the applicable law prescribes the mode of exercising the power, the mode prescribed must be followed, or the assessment will be void. . ." (Internal quotation marks omitted.)
Exhibit K, a copy of the caveat that the defendant filed, is dated July 14, 1992. Court Exhibit No. 1 recites that July 14, 1992, is "well over four years from the date of completion of the sewer line." If "the sewer line" refers to the sewer line on Middle River Drive, the "four years" is an obvious error, since the stipulation recites that "the sewer line was installed in 1988 and 1989." If "the sewer line" refers to the Route 190 project, the "four years" is also an error since construction of that project did not even start until 1989. Regardless of the error in the stipulation, however, the defendant concedes in its brief that, to comply with Article VIII, Section 6, a caveat should have been filed in December, 1989, and that it was not filed until July 14, 1992.
In Trivalent Realty Co., supra, a municipal parking lot for 400 cars was approved by the planning commission. Thereafter, the planning director of the commission presented "a revised design layout of the parking lot." This revised design eliminated from the original plan one tract, incorporated a different tract, and reduced the capacity of the lot from 400 cars to 207 cars. The assessments were based on the "revised design." That court held that the assessments were invalid because CT Page 10846 the applicable statutes required a new submission of the revised design layout, the 400-car lot having been previously approved by the commission. That court summarized thus the differences from the original design: eliminating one tract "changed the basic configuration of the [parking] lot, reduced it in size by nearly one acre, and accounts for approximately one-half of the reduced number of parking spaces."
The assessments in Trivalent were invalid because the assessments were levied on a project different from the one originally approved. The general principle that Trivalent cites is clearly applicable to the facts in that case and clearly inapplicable to the facts in the present case. The key words in that general principle are "mandatory and jurisdictional." There are three principal reasons why filing a caveat for the Middle River Drive sewer was not "mandatory and jurisdictional" in reference to the Route 190 project benefits assessments. First, as noted previously, Stafford did not intend to make any benefits assessment. The present plaintiffs owed nothing to Stafford for the Middle River Drive sewer. A caveat on the land records would merely have been a meaningless cloud on title. See Laudano v. Laudano, 108 Conn. 37, 39, 142, 142 A. 407
(1928). Second, the ordinance speaks of "passage of resolution and final action on approval of funds therefor," as conditions precedent to the duty to file the caveat. Neither of these conditions occurred in connection with the Middle River Drive sewer. Third, the Middle River Drive sewer was constructed as a discrete project. Whether a caveat was filed for that project would have no bearing on the validity of the assessments for the Route 190 project.
Nor was filing the caveat within the ninety day period "mandatory and jurisdictional" for the Route 190 project. "For the reason that individuals or the public should not be made to suffer for the dereliction of public officers, provisions regulating the duties of public officers and specifying the time for their performance are in that regard generally directory." Weiss v. Newtown, 4 Conn. App. 200, 202, 493 A.2d 273 (1985). "On previous occasions we have held that acts of a public official performed at a time beyond the limit prescribed are nonetheless effective." Tramontano v. Dileto, 192 Conn. 426, 433, 472 A. 768 (1984). To paraphrase what the Supreme Court said in the latter case, this court is "persuaded that the [town] never intended that failure . . . to comply with this time limit should nullify any subsequent action taken."Tramontano, supra, at 433.
If the ordinance were construed as mandatory instead of directory, all assessments would be nullified because of the delay in recording the caveat. "In construing a statute, common sense must be used and courts must assume that a reasonable and rational result was intended . . . A CT Page 10847 statute should not be interpreted to thwart its purpose . . . and its interpretation must avoid a consequence which fails to attain a rational and sensible result." Kron v. Thelen, 178 Conn. 189, 192, 432 A.2d 857
(1979). A common sense interpretation of the ninety day requirement is that, even if the caveat is recorded later than the ninety days, the caveat is effective from the day it is recorded. That interpretation carries out the "warning" purpose of the caveat and promotes "the maintenance of the effectiveness of our registry system" that is referred to in Hawley v.McCabe, supra. Although the cited authorities concern principles for the construction of statutes, the same principles apply to the construction of ordinances. With respect to "a municipal legislative enactment . . . the same canons of construction are applicable as though it were enacted as a state statute." Aaron v. Conservation Commission, 183 Conn. 532, 537,441 A.2d 30 (1981).
Concerning "jurisdictional" claims about benefits assessments, our Supreme Court has said, "It may be conceded that an assessment would be void if made for an improvement which the municipal corporation had no authority to make . . . or where a municipality had so far departed from the procedure established by the statute as to oust itself of jurisdiction."Bennett Estate, Inc. v. New Haven, 117 Conn. 25, 34, 166 A. 680 (1933). "The [municipal sewer agency] has jurisdiction in reference to any property to determine whether or not it is in fact benefited; if it assesses benefits where a property is not benefited it commits an error but does not act beyond its jurisdiction." Id. at 38. Also approving this distinction between an "error" and "acting beyond jurisdiction" is Vaill v. SewerCommission, 168 Conn. 514, 519, 362 A.2d 885 (1975). This court is of the opinion, and finds, that the failure to record the caveat within the ninety day period is an error that does not oust the WPCA of jurisdiction to levy benefits assessments for the Route 190 project and that that error does not invalidate the assessments against the Goepfert parcel or the Morin parcel.
 V
In Shoreline Care Ltd. Partnership v. North Branford, 231 Conn. 344,350-351, 650 A.2d 142 (1994) our Supreme Court said, "Special assessments for local improvements, although bottomed on the taxing power, are based on the principle of special benefit to property. It is a local assessment imposed occasionally, as required, upon a limited class of persons interested in a local improvement; who are assumed to be benefited by the improvement to the extent of the assessment. . ." (Internal quotation marks omitted). "(T)here is a presumption as to the regularity, validity and correctness of a special benefit assessment that imposes the burden of proof on the property owner challenging the assessment." Id at CT Page 10848 350. This court is of the opinion, and finds, that the plaintiffs have not sustained the burden of proving that the assessments they challenge are invalid.
Judgment may enter for the defendant in each case.
Rubinow, State Trial Referee