[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 12554-R
I
 Introduction and factual Background 
The plaintiff, Somersville Corporation, has filed a three count complaint against the defendant Town of Bloomfield alleging that it has breached a thirty-seven year old agreement to provide sewer service to property formerly owned by the plaintiff.
On August 18, 1958, Green Manor Construction Co., Inc., also known as Green Manor Corporation (hereinafter, "Green Manor"), entered into an agreement with the Town whereby the Town would extend a sewer line to Green Manor's property at the south west corner of Blue Hills Avenue and Wintonbury Avenue. Green Manor paid an initial deposit of $3,000 and was to make a further payment of $7,000 at the time of connection. The agreement, which was recorded on the Bloomfield land records on December 3, 1958, states that "[t]his agreement shall inure to the benefit of and be binding upon both the parties hereto and their respective successors and assigns." Subsequent to the recording to the agreement, Somersville Corporation became a successor in title to the property. As of May 1989, the property had not yet been developed and thus, the $7,000.00 was never paid.
The Metropolitan District Commission (hereinafter, the "MDC") has now installed a new sewer line along the property frontage. On May 4, 1989, the MDC levied an assessment of $169,919.04 against the property then owned by Somersville Corporation. On May 16, 1989, Somersville filed an appeal from the sewer assessment pursuant to General Statutes § 7-249. That appeal was dismissed as a result of Somersville's failure to prove that it was aggrieved.[1] The plaintiff, moreover, did not raise the issue of the 1958 agreement. On April 6, 1992, Somersville paid the sum of $169,919.04 to the MDC in satisfaction of the above claim.
 II Discussion
CT Page 12554-S
The agreement between the Town and Green Manor provides, in pertinent part, that:
 WHEREAS Town has undertaken to construct a new elementary school on the westerly side of Blue Hills Avenue near the corner of Wintonbury Avenue in said Bloomfield, and
 WHEREAS, Town installed sewer line to service said school, and
 WHEREAS, [Green Manor] requested Town to expand said sewer line so that property owned by estates at the south west corner of Blue Hills Avenue and Wintonbury Avenue could be serviced on said line, . . .
 [The Town of Bloomfield agrees:] (1) To expand said sewer line and allow [Green Manor,] at its own cost and expense, to connect to the same on the terms and conditions herein stated for the purposes of servicing property presently owned by [Green Manor]. . . . (2) That [Green Manor] may, at its own cost and expense, enter from Blue Hills Avenue land owned by Town for purpose of connecting to said sewer and making repairs and replacements.
The issue presented to this court is whether the plaintiff, as successor in interest to Green Manor, can enforce the August 18, 1958 agreement.[2] The plaintiff argues first, that it continues to have the right to connect to the town sewer line mentioned in the 1958 agreement[3] and second, that as a result of that right, the new MDC sewer line does not, in fact, benefit its property. Accordingly, the plaintiff argues that the Town should now pay it the $169,919.04 that it paid the MDC.
 A.
The Town first contests the enforceability of the agreement based on the doctrine of laches. "Laches consists of two elements. First, there must have been a delay that was inexcusable, and second, that delay must have prejudiced the defendant." (Internal quotation marks omitted.) Emerick v.CT Page 12554-TEmerick, 28 Conn. App. 794, 803-04, 613 A.2d 1351 (1992). "The mere lapse of time does not constitute laches unless it results in prejudice to the defendant as where, for example, the defendant is led to change his position with respect to the matter in question." (Citations omitted.) Id., 804. "In order to establish this defense, the defendant must prove that the plaintiff unreasonably and inexcusably delayed bringing suit, and that the defendant suffered prejudice as a result of the delay." Coscina v. Coscina, 24 Conn. App. 190, 194,587 A.2d 159 (1991). "Laches in legal significance . . . works a disadvantage to another." Berlin v. Olson, 183 Conn. 337,344, 439 A.2d 357 (1981).
In the present case, almost 40 years have passed and Green Manor and/or its successors, including the plaintiff, have not developed the property and have not attempted to enforce the 1958 agreement. As a result of the installation of the new MDC line, the subject line and its pump station no longer operate and carry sewage flow.
Under these circumstances, this court finds that the plaintiff has unreasonably delayed bringing this suit and that the defendant will clearly suffer prejudice as a result of the delay. A demand for connection prior to the MDC's installation of the new line and prior to the elimination of the pumping station (between 1987 and 1989) would perhaps have been timely. Waiting until the line was disconnected and the pump station removed is not. The plaintiff surely had knowledge of the MDC action but delayed in bringing this action until after the structure was removed. The delay is both inexcusable and has prejudiced the defendant.
It should also be noted that as the agreement did not specify a time frame in which the agreement would be valid, this court will assume that the parties intended the agreement to endure for a reasonable time. See, Breen v. Phelps,186 Conn. 86, 93, 439 A.2d 1066 (1982). That reasonable time has now passed as the line is no longer operational.
 B.
The defendant also argues that the doctrines of impossibility of performance and frustration of purpose excuse performance of the 1958 agreement. As noted in Hess v.Dumouchel Paper Co., 154 Conn. 343, 349 (1966), "[a]lthough CT Page 12554-U related in terms of their ultimate objective, each of these two principles is based on its own separate and distinct rationale." "The doctrine of frustration of purpose . . . excuses a promisor in certain situations where the objectives of the contract have been utterly defeated by circumstances arising after the formation of the agreement." "Excuse is allowed under this rule even though there is no impediment to actual performance." Id., 351.
Impossibility of performance is obvious: "[t]he performance of a contract is excused when the thing to be done becomes impossible." Barnett v. Barnett, 26 Conn. App. 355,358 (1992). It is not impossible to connect to the old sewer line (although the pumping station has been removed) and thus, performance cannot be excused under this doctrine. Nevertheless, "the doctrine of `impossibility' has come to include `physical impossibility', `frustration of purpose' and `impracticability' because of contingencies rendering performance more costly. Dills v. Enfield, 210 Conn. 705, 717 F. 16. As noted by our Supreme Court,
 "Under the doctrine of frustration of purpose, as under the impracticability doctrine, the event upon which the obligor relies to excuse his performance cannot be an event that the parties foresaw at the time of the contract."
O'Hara v State, 218 Conn. 628, 638 A.2d (1991). Under the above doctrines, there are four similar tests:
 (1) the event made the performance impracticable; (2) the nonoccurrence of the event was a basic assumption on which the contract was made; (3) the impracticability resulted without the fault of the party seeking to be excused; and (4) the party has not assumed a greater obligation than the law imposes. (internal citations omitted; internal footnotes omitted). Id., 637-638.
As the sewer line referred to in the 1958 agreement is no longer operational, the objectives of the 1958 agreement have been defeated by circumstances arising after the formation of CT Page 12554-V the agreement. The purpose of the agreement was for Green Manor and/or its successors to have the ability to connect to a town sewer line which was servicing an elementary school in Bloomfield. That line was rendered not only obsolete but illogical as a result of the new MDC gravity line. The MDC, not Bloomfield, installed the new line. While Bloomfield may be a member of the MDC, this court cannot find that it acted so as to frustrate or render the Green Manor contract impracticable. The parties entered into the 1958 contract because the MDC had no line in the area. Such is not the case today. As noted in Dills v. Enfield, supra, 210 Conn. 719:
 the central inquiry is whether the nonoccurrence of the alleged impracticable condition `was a basic assumption on which the contract was made.' General Statutes § 42a-2-625(a); 2 Restatement (Second) Contracts § 261; E. Farnsworth, supra § 9.6 pp. 679-84.
This court finds that the contract was based on the nonoccurrence of the MDC line and thus the frustration of purpose and impracticability doctrines discussed above excuse performance.
 C.
It is clear to this court that this action was filed as a result of the MDC sewer assessment. Somersville is now seeking reimbursement for the $169,919.04 that it paid to the MDC. This court finds it is not entitled to reimbursement from Bloomfield. The plaintiff makes the threshold mistake of assuming that the connection agreement is the equivalent of a sewer benefit assessment. It is not. The right to connect to a sewer line (which of course, is now no longer in operation) is not the same as a benefit bestowed on one's property because a sewer line is installed along its frontage and available for connection. One could, for instance, have a properly functioning, traditional septic system and find that the governmental authority has constructed a sewer line along its property. The property would be still benefitted [benefited] by the new line notwithstanding the property owner's decision to not connect to the new line. Indeed, our Supreme Court has stated that "[a] property need not be connected to the system in order for it to receive a benefit", Shoreline Care LTD.CT Page 12554-WPartnership v. North Branford, 231 Conn. 344, 351-52, ___ A.2d ___ (1994).
In Shoreline, the plaintiff built its system at a cost of $445,000 and contracted to connect its private system with the Town's sewers.[4] Its agreement provided, in part, that "there will be no inspection fees, connection charges or sewer use assessments imposed upon Shoreline." Id., 349. North Branford then levied a sewer assessment on Shoreline of $148,000 which Shoreline contested arguing that as it had built the system at no cost to the town, it was receiving no benefit from the town.
The Supreme Court reversed the lower court's decision sustaining the appeal and stated that the issue in a sewer assessment is simply: "[i]f the property has increased in market value merely by virtue of its access to town sewer, it has received a benefit for which an assessment may be levied. Id., 352. It also added:
 Nor is a property's actual use of a sewer system determinative of the benefit it has received from the system. Indeed, as we noted in Tower Business Park Associates No. 1 Ltd. Partnership v. Water Pollution Control Authority, supra, 213 Conn. 119, "[m]any authorities have rejected current actual use as a determinative factor in the assessment of benefits, since it often is unrelated to market value and fails to reflect the increase in market value resulting from the installation of sewers." In addition, counsel for both parties conceded during oral argument in this court that a person who decided to build a residential home in district A and chose to install a septic tank, rather than connect to the town sewerage system, would nevertheless be liable for a benefit assessment.
Shoreline Care LTP. Partnership v North Branford, supra,231 Conn. 351-2, footnote 10.
Somerville's argument is similar to Shoreline's. In CT Page 12554-XShoreline, supra, the court held the "the costs, if any, that a property owner may incur to connect to an existing sewer system are only relevant insofar as they may affect the market value of the property." Id., 352. Somersville's burden, in the MDC appeal, in showing that the $169,919.04 was excessive, would have been to show that "the increase in market value of its property as a result of the access was less than the . . . assessment." Id., 353. In fact, as stated by the Supreme Court "[i]ndeed, . . . Shoreline was required to establish that its property had not appreciated at all." Id., 354. In our case the issue of the assessment, that is, the $169,919.04, has already been resolved.
 D.
The defendant, however, asserts that the plaintiff should be estopped from asserting these claims because of Somersville's payment of the sewer assessment under a voluntary settlement of its appeal. The defendant makes this argument relying upon the doctrines of collateral estoppel and res judicata.
"Collateral estoppel, or issue preclusion, prohibits the litigation of an issue when that issue was actually litigated and necessarily determined in a prior action." Aetna Casualty Surety Co. v. Jones, 220 Conn. 285, 296 (1991). "For an issue to be subject to collateral estoppel it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment." Id., quoting Virgo v. Lyons,209 Conn. 497, 501, 551 A.2d 1243 (1988). Since Somersville paid the sum of $169,919.04 to the MDC in a voluntary settlement of the assessment, issues pertinent to this case were never fully litigated nor were such issues actually decided. Therefore, the doctrine of collateral estoppel does not preclude the plaintiff from asserting a claim against the Town of Bloomfield.
The defendant claims that the doctrine of res judicata prohibits this litigation because the issues raised herein could have been raised in the prior litigation with the MDC which, as noted, resulted in a voluntary settlement.
A settlement prior to the completion of trial "operates as res judicata to the same extent as a judgment or decree CT Page 12554-Y rendered after answer and contest." Gagne v. Norton,189 Conn. 29, 31 (1983). "The doctrine of res judicata provides that a former judgment serves as an absolute bar to a subsequent action involving any claims relating to such a cause of action which were actually made or which might have been made." Connecticut Water Co. v. Beausoleil, 204 Conn. 38,43 (1987).
In order to resolve the issue of whether the matters at issue herein could have been litigated in the sewer assessment appeal under §§ 7-249 and 7-250, it is necessary to determine the scope of those statutes. See Id. "Special assessments for local improvements . . . are based on the principle of special benefit to the property." Shoreline Care LtdPartnership v. North Branford, supra, 231 Conn. at 350-51.
The focus of the administrative appeal would have been the increase in property value due to the MDC line being installed. The agreement between Green Manor and its successor in title, Somersville Corporation, and the Town of Bloomfield to provide sewer service is a matter separate and apart from the service provided by the MDC sewer line and the increase in property value resulting from the MDC line. Therefore, the agreement between Bloomfield and the plaintiff in this action is a matter that would not relate to the issue of the benefit to the property from the MDC sewer line and such agreement would not have been a proper subject of the sewer assessment appeal. Consequently, the settlement in the administrative appeal would not have res judicata effect on the instant action.
 III Conclusion
Inasmuch as the $10,000 connection fee is not the equivalent of the statutory sewer assessment, Somersville's, claim under the agreement (even if the agreement were enforceable — which as previously discussed, is not) does not insulate it from the MDC claim. The town, therefore, has no obligation to pay any part of the assessment. Judgment shall enter for the Town on the first two counts and for the plaintiff in the third count in the sum of three thousand dollars plus costs.
Berger, J. CT Page 12554-Z