[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Pursuant to the provisions of § 7-250 of the Connecticut General Statutes, the plaintiffs are appealing sewer assessments levied by the defendants on property known as 162 Wall Street in the town of Hebron. CT Page 12211
The property in question is owned by the plaintiffs and they are aggrieved by the decision of the Hebron Water Pollution Control Authority (WPCA).
Law
A municipality may levy a benefit assessment upon property especially benefited by the availability of a public sewer system. The authorizing statute, § 7-249, provides in pertinent part as follows:
 "At any time after a municipality, by its water pollution control authority, has acquired or constructed, a sewerage system or portion thereof, the water pollution control authority may levy benefit assessments upon the lands and buildings in the municipality which, in its judgment, are especially benefitted [benefited] thereby . . . . No assessment shall be made against any property in excess of the special benefit to accrue to such property . . . ."
In calculating the special benefit conferred upon a piece of property, one determines the increase in the fair market value of the property resulting from the availability of a public sewer system. Shoreline Care LTD. Partnership v. North Branford,231 Conn. 344, 351 (1994). Bridge Street Associates v. WaterPollution Control Authority of Suffield, 15 Conn. App. 140, 144
(1988).
Using this formula, it may happen that the town cannot fully recoup the cost of the sewer system from the property owners.Anderson v. Litchfield, 4 Conn. App. 24, 28 (1985). Bridge StreetAssociates v. WPCA of Suffield, supra.
Assessments of benefits are presumed to be valid and correct and the property owner must prove, by a fair preponderance of the evidence, that the assessment is greater than the increase in market value resulting from the improvement to the property.Shoreline Care LTD Partnership v. North Branford, 231 Conn. 344,353 (1994).
Discussion
The plaintiff has overcome the presumption of the validity of the assessment. In arriving at its assessment the town gave no CT Page 12212 consideration to the market value increase to the property, but rather computed the cost of installation, deducted from that cost the amount of a state grant and the amount of a town of Hebron contribution to arrive at a net cost amount. It then divided that amount by the number of units on the property. This was an improper methodology under the statutory requirements of §7-249.
The plaintiffs presented expert testimony as to the fair market value of the property before and after the availability of public sewers. This expert was Christopher Italia, a certified and experienced real estate appraiser.
The defendants' expert appraiser was Leslie Lewis, also a licensed and experienced real estate appraiser.
Neither appraiser used a comparable sales approach in their evaluation. They both agreed that because there are so few sales of rural apartment complexes which would provide information related to the absence or presence of public sewers, a comparable sales approach would have little, if any, reliability.
Both experts utilized an income capitalization approach which essentially estimates the yearly expected income from the property, subtracts the yearly expected expenses, and from that determines an expected yield on investment. That yield or net income amount is then divided by a selected capitalization rate to arrive at a fair market value.
The defendants' expert, Leslie Lewis, for comparison purposes, also computed the benefit (or increase in market value) by the cost approach which essentially estimates the current cost to build or replace the structure, then adjusts that figure for the age of the existing buildings and any site improvements. The cost of septic systems versus sewers are then factored in to determine the benefit.
The Court believes the cost approach to have less validity than the income capitalization approach. A prospective buyer would be unlikely to assess the market value of a piece of property on the basis of what it would cost to replace the property. An investor is more likely to assess the market value of a property by determining what the return on investment is likely to be, i.e. the income capitalization approach. The Court can determine which method of evaluation accomplishes a just CT Page 12213 result. National Folding Box Co. v. New Haven, 146 Conn. 578, 588
(1959).
The property in question consists of three, two-story apartment buildings, each building with eight, two-bedroom apartments for a total of twenty-four apartment units. The apartments are on a tract of land of approximately 14.5 acres. It is assessed (at 70%) for $786380.
The town levied a sewer assessment of $120000. Christopher Italia, the plaintiff's expert, using the income capitalization approach, estimated the market value of the improvement to be $42000.
Leslie Lewis, the defendants' expert, using the same approach, estimated the market value of the improvement to be $146000. He also evaluated the benefit using a cost approach which resulted in an estimated benefit of $151600. Either way, according to Mr. Lewis, the sewer assessment is not excessive.
The significant difference between the two appraisers is the cost of septic system replacement used by them in reaching their conclusions. The plaintiffs' engineer estimated the cost of repairing the septic system to be $49474, while the defendants' engineer estimated the cost to be $102000, plus likely engineering and design costs of $8000 to $10000. Based on the examination conducted by counsel of these witnesses, the Court concludes that some adjustment to their figures is warranted. Richard Mihok, the plaintiff's expert based his conclusions on an underestimated average daily water usage as set forth in State Health Department regulations, which resulted in substantially understating the size of the leaching fields needed to replace the old septic system (which was failing on this property). This error in turn resulted in an incorrect reserve account used to compute the cost of periodically replacing the septic system. In short, this miscalculation skewed the appraisal by making the annual expense figure less than it should be. There were also other costs associated with replacing the septic system which were not considered such as the cost of engineering and design.
The defendant, on the other hand, in his calculations attributed $4260 annually to income derived from having washing machines and dryers on the premises. But the testimony was that these appliances were in place before the sewers were put in. The Court does not credit this item as an improvement related to the CT Page 12214 installation of sewers, nor do they significantly affect the income produced by the property. Also, the defendant's estimated cost to replace the septic system could be lessened somewhat — for example by using less expensive galleries instead of infiltrators.
Adjusting for these factors, the Court concludes the benefit assessed to the property in question to be $85000 and that this amount would not diminish the income this apartment complex can generate.
Accordingly, the appeal is sustained and the benefit assessment is reduced to $85000.
Expert witness fees are approved as follows:
Appraisal fee $900
Engineering fee $400
Klaczak, J.