[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Pursuant to the provisions of § 7-250 of the Connecticut General Statutes, the plaintiffs are appealing sewer assessments levied by the defendants on property known as 202 Wall Street in the town of Hebron.
The property in question is owned by the plaintiffs and they are aggrieved by the decision of the Hebron Water Pollution Control Authority (WPCA). CT Page 12215
Law
A municipality may levy a benefit assessment upon property especially benefited by the availability of a public sewer system. The authorizing statute, § 7-249, provides in pertinent part as follows:
 "At any time after a municipality, by its water pollution control authority, has acquired or constructed, a sewerage system or portion thereof, the water pollution control authority may levy benefit assessments upon the lands and buildings in the municipality which, in its judgment, are especially benefitted [benefited] thereby. . . . No assessment shall be made against any property in excess of the special benefit to accrue to such property . . . ."
In calculating the special benefit conferred upon a piece of property, one determines the increase in the fair market value of the property resulting from the availability of a public sewer system. Shoreline Care LTD. Partnership v. North Branford,231 Conn. 344, 351 (1994). Bridge Street Associates v. WaterPollution Control Authority of Suffield, 15 Conn. App. 140, 144
(1988).
Using this formula, it may happen that the town cannot fully recoup the cost of the sewer system from the benefitted [benefited] property owners. Anderson v. Litchfield, 4 Conn. App. 24,28 (1985). Bridge Street Associates v. WPCA of Suffield, supra.
Assessments of benefits are presumed to be valid and correct and the property owner must prove, by a fair preponderance of the evidence, that the assessment is greater than the increase in market value resulting from the improvement to the property.Shoreline Care LTD Partnership v. North Branford, 231 Conn. 344,353 (1994).
Discussion
The plaintiff has overcome the presumption of the validity of the assessment. Indeed, the defendant's own appraisal is $5500 less than the towns assessment of $28000. In arriving at its assessment the town gave no consideration to the market value increase to the property, but rather computed the cost of installation, deducted from that cost the amount of a state grant and the amount of a town of Hebron contribution to arrive at a CT Page 12216 net cost amount. It then divided that amount by the number of units on the property. This was an improper methodology under the statutory requirements of § 7-249.
The plaintiffs presented expert testimony as to the fair market value of the property before and after the availability of public sewers. This expert was Christopher Italia, a certified and experienced real estate appraiser.
The defendants' expert appraiser was Leslie Lewis, also a licensed and experienced real estate appraiser.
Neither appraiser used a comparable sales approach in their evaluation. They both agreed that because there are so few sales of rural apartment complexes which would provide information related to the absence or presence of public sewers, a comparable sales approach would have little, if any, reliability.
The plaintiffs' expert, Italia, utilized an Income Capitalization approach which essentially estimates the yearly expected income from the property, subtracts the yearly expected expenses, and from that determines an expected yield on investment. That yield or net income amount is then divided by a selected capitalization rate to arrive at a fair market value.
Utilizing this method, Italia determined the fair market value of the property with sewers to be $148000 and $139000 with a septic system, therefore concluding that the benefit to the property is the difference of $9000.
The defendants' expert, Leslie Lewis, did not utilize an Income Utilization approach because, in his opinion, the income approach is an unreliable method to evaluate a small apartment complex such as this one which contains five units.
Lewis utilized a cost approach which essentially estimates the current cost to build the structure, adjusts the figure for the age of the structure and site improvements, and factors in the cost of septic system versus sewers.
Utilizing this method, Lewis determined the benefit (or increase in market value) to the property as a result of the sewer was $22500.
The Court believes the cost approach to have less validity CT Page 12217 than the Income Capitalization approach. Market value is a likely price which a property should bring if sold in a competitive and open market. A prospective buyer would be unlikely to assess value on the basis of what it would cost to replace the structure and property at today's costs, even factoring in the age of the building. An investor is more likely to consider the income against expenses and attempt to determine from those figures what his expected profit is likely to be. The Court can determine which method of evaluation accomplishes a just result. NationalFolding Box Co. v. New Haven, 146 Conn. 578, 588 (1959).
But while ascribing more validity to the income capitalization approach, the Court does not entirely accept the opinion of the plaintiffs' expert. From the testimony, some adjustment to his figures are appropriate.
The principal adjustment arises out of the cost of periodically replacing the septic system as that cost is factored into the market value of the property.
The plaintiff presented the testimony of Richard Mihok, a professional engineer who testified that the cost to replace the septic system was approximately $8800, while the defendants' expert, Michael Dilaj, also a professional engineer with a background in designing septic systems estimated the cost to be $13700. The Court finds Dilaj's testimony to be more persuasive. Mihok's design and conclusions were based on underestimated average daily water usage as set out by State Health Department regulations, thus resulting in understating the size of required leaching fields and also resulting in an incorrect set aside or reserve when computing the yearly expenses for replacing the septic system every 20 to 25 years. In short, this miscalculation skewed the appraisal by making the expenses smaller than they should be when arriving at septic system appraisal figures. In addition, there are other costs associated with replacing the septic system which were not considered by the plaintiffs' expert, such as the cost of clearing trees, and the cost of engineering and design.
The Court has not factored in any income from washing machines. It finds there is insignificant change in income from washing machines located on the premises, regardless of whether there are sewers or septic systems.
Taking these adjustment factors into consideration, the court CT Page 12218 concludes the benefit assessed to the property in question to be $14000 and concludes that this figure would not diminish the income this apartment complex can generate.
Further, there is obviously an enhancement to a prospective buyer of having public sewers.
Accordingly, the appeal is sustained and the benefit assessment is reduced to $14000.
Expert witness fees are approved as follows:
Appraisal fee $ 900
Engineering fee $ 400
Klaczak, J.