[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 FACTS
The plaintiff, Sonics Materials, Inc., brings this appeal pursuant to § 7-250 of the Connecticut General Statutes, from a special benefit assessment voted by the defendant, Water Pollution Control Authority (WPCA) of the Town of Newtown.
The property affected by the assessment is located at 55A Church Hill Road a/k/a 53 Church Hill Road.
It consists of 17.237 acres of which 15.587 acres are located in an Industrial Zone (M-2), and 1.65 acres are located in a Residential Zone (R-1).
The plaintiff purchased the property for $1,265,000 in September of 1997, in what is agreed to have been an arms-length transaction.
A 63,000 square foot building is located on the site.
The building is a one story structure constructed of masonry and steel, and has a concrete foundation.
Additions were completed in 1965 and 1973, prior to its purchase by the present owner.
The structure is situated in the southeast portion of the property near Church Hill Road.
The parcel is heavily impacted by wetlands, making further building CT Page 4808 expansion problematic.
Thirteen (13) acres, or 75 percent of the land area, is designated as wetlands, serving as an impediment to future expansion.
The usable site area consists of 2.5 acres.
Since the bulk of the property is located in a M-2 zone, laboratories devoted to research, design and experimentation, executive offices, printing and publishing establishments, manufacturing, and wholesale businesses are permitted uses.
The parcel is nonconforming as to minimum frontage requirements.
Access is gained through a 440 foot right-of-way over an adjoining parcel.
Public hearings were held concerning the special benefit assessment on September 11, 1997 and December 18, 1997.
A special benefit assessment of $176,490 was voted by the Water Pollution Control Authority on February 26, 1998, and was recorded with the Newtown Town Clerk on March 2, 1998.
A timely appeal was commenced
At the time of the benefit assessment, renovations were in progress.
The renovations, which began in January of 1998, involved modernizing the building's interior, removing asbestos, and converting much of the space from warehouse to flex-type space.
On the effective date of the assessment March 2, 1998, the renovations were approximately 40 percent complete.
Work was not completed until May, 1998.
The plaintiff claims to be aggrieved by the direct benefit assessment voted by the WPCA, claiming that the assessment levied on the property exceeds any special benefit accruing to the property as a result of the construction of a sewage system serving the property.
 STANDARD OF REVIEW
Appeals under § 7-250 of the Connecticut General Statutes are the exclusive method for challenging assessments. Zizka v. WaterCT Page 4809Pollution Control Authority, 195 Conn. 682, 690 (1985). The court sits as a finder of fact on an appeal, and has broad equitable powers to confirm or alter the assessment of the authority. Vail v. SewerCommission of the Town of Salisbury, 168 Conn. 514, 519 (1975).
The court tries the issues de novo, and review is not constrained or limited to determining whether the agency acted arbitrarily, illegally or unreasonably. O'Rourke v. Stamford, 179 Conn. 342, 345 (1979).
Although a presumption of validity attaches to a special benefit assessment levied by a municipal agency, that presumption is overcome if competent evidence is introduced demonstrating that the assessment is greater than the increase in the value of the property benefitted. Cyr v. Coventry,216 Conn. 436, 443 (1990). Proof must be by a fair preponderance of the evidence. Tower Bus Park No. 1 Partnership v.Water Pollution Control Authority, 213 Conn. 112, 117 (1989).
The benefit to the property owner is measured solely according to the amount by which the improvement causes the property to increase in market value. Katz v. West Hartford, 191 Conn. 594, 602 (1983). The monetary value of the special benefit conferred upon a particular piece of property is calculated by the difference between the value of the real estate with the sewage system, and its value without the sewage system. Shoreline Care Ltd. Partnership v. North Branford,231 Conn. 344, 351 (1994).
The benefit conferred is that conferred upon a particular piece of property, not that which accrues to the general public. Cyr v.Coventry, supra, 442; Windham Heights Associates v. Windham,179 Conn. 229, 231 (1979).
Whether an assessment exceeds the special benefit levied, is a question of fact for the trial court. Gaynor-Stafford Industries, Inc. v. WaterPollution Control Authority, 192 Conn. 638, 647 (1984).
PLAINTIFF IS AGGRIEVED BY SPECIAL BENEFIT ASSESSMENT
At trial, the plaintiff presented testimony and an appraisal report (Exhibit 1) from Neal S. Kaye.
The defendant countered with testimony and a report (Exhibit A) from Christopher Kerin.
Donna McCarthy, the Director of Environmental Health for the Town of Newtown, also testified. CT Page 4810
Both appraisers agreed that the highest and best use of the property is as flex-space, consistent with the renovation in progress on March 2, 1998, and completed in May of that same year.
This use would include office space, research and development, and manufacturing.
The two appraisers fundamentally disagree, however, concerning the extent to which the renovations were dependent upon the presence of sewers at the site.
A determination of whether the direct benefit assessment exceeds the special benefit levied, and the extent to which the property has benefitted from the sewage system, depends upon the resolution of that question.
Neither appraiser relied upon the methodology utilized by the WPCA, but instead utilized their own methodology.
Kerin found that the value of the parcel, prior to the installation of sewers, was $1,850,000.
He assumed the cost of a new septic system to be $128,460, and assumed that the use of the building as flex-space after the renovations would not have been possible, if the property was served only by a septic system.
He did not use the comparable sales approach to determine the pre-sewers value, but developed his own methodology (Exhibit A, p. 34).
In his determination of the after-sewers value, Kerin gave all weight to the "income approach," an approach which utilizes the income producing potential of property to an investor as an indication of present and future value.
He rejected the "cost approach," an approach which looks to the cost of substituting the site with improvements, and cited the sales comparison approach purely for purposes of support (Exhibit A, p. 31).
Kaye's analysis (Exhibit 1), used in determining the value of the property prior to the installation of sewers, did not use the sales comparison approach.
Instead, he utilized both the cost approach and the income approach. CT Page 4811
He determined, utilizing the income approach, that the pre-sewer value was $1,420,000 (Exhibit 1, pp. 13-14).
Utilizing the cost approach, he differentiated between the value of the land and the value of the. improvements.
He further divided the land between the primary site, excess land and residential land, as follows: (Exhibit 1, p. 10.)
 Primary Site $160,000 Excess Land $271,600 Residential $ 4,125
TOTAL $435,725
He valued the improvements at $930,000, for a total value of $1,365,000.
After the sewer construction, he found, utilizing the cost approach, that the value of the property had been enhanced.
The after-sewers land values were determined as follows:
 Primary site $190,000 Excess Land $297,063 Residential $ 4,125
TOTAL $491,188
He enhanced the value of the improvement by $35,000, or $965,000, for a total after-sewers value of $1,455,000.
He determined the bulk of the increase would occur to the primary site, while the excess land was impacted only marginally due to the presence of wetlands on much of the property.
The residential land received no direct benefit from the presence of the sewer system on the site.
Kaye determined, using the cost approach, an increase in value by virtue of the presence of sewers at $90,000, while the income approach generated an increase of $60,000.
In utilizing the income approach, Kaye assumed that the cost of replacing the septic system on the site would be $80,000, rather than the $106,000 figure testified to by Ms. McCarthy. CT Page 4812
He assumed (Exhibit 1, p. 14) that the property would generate income of $169,808 annually, and that non-reimbursable expenses should be computed at 12.94 percent of that figure.
If the $106,000 figure is utilized, rather than the $80,000 assumption, the ratio of non-reimbursable expenses would be at 13.71 rather than 12.94 percent, using the twenty year period as the life of a commercial system.
Utilizing that figure would increase the benefit to the property due to the presence of sewers, and would also account for an upgrading of the septic system which might prove necessary in order to accommodate the renovations.
Kaye found a direct benefit assessment of $75,000 by taking an average of his cost approach and income approach computations.
Kerin valued the direct benefit assessment at $180,000, using the income approach and eschewing the cost and fair market value approaches.
To adopt the direct benefit assessment found by Kerin, it is necessary to accept the premise that the bulk of the renovations undertaken by the plaintiff in 1998 were possible because of the presence of sewers at the site.
While the evidence has shown that the value of property is enhanced by the presence of sewers, a direct correlation between the presence of sewers and the ability to complete the 1998 renovations, has not been demonstrated in this case.
The septic system on the site had reached the end of its useful life and was in need of repair or replacement on March of 1998.
However, it is most likely that the cost of that replacement would have been paid over many years, and not as a one time operating expense.
As a general rule, the presence of sewers will facilitate the expansion of existing buildings or the construction of additional building on a large site.
However, the presence of wetlands covering 75 percent of the subject property, renders expansion suspect, and more problematic than on a site not impacted as severely by wetlands.
Expansion to any significant degree is speculative with or without sewers CT Page 4813 servicing the property.
Based upon the evidence presented, the court makes the following findings:
1. IT IS FOUND that the income approach to value, best reflects the fair market value of the property at 55A Church Hill Road, Newtown, based upon the facts of this case.
2. IT IS FOUND that the cost approach also provides a reliable means of determining fair market value, based upon the testimony presented.
3. IT IS FOUND that the sales comparison approach has limited application in this case, given the unique status of property with renovations in progress as of the date of the assessment, and the dearth of comparable sales transactions.
4. IT IS FOUND that the preferable figure for measuring the cost of replacing a commercial septic system is $106,000, as testified to by Donna McCarthy.
5. IT IS FOUND that the direct benefit assessment of 55A Church Hill Road a/k/a 53 Church Hill Road, is $85,000, rather than the $176,490 assessed by the Water Pollution Control Authority.
6. IT IS FOUND that the plaintiff, Sonics Materials, Inc., has proven by a fair preponderance of the evidence, that the direct benefit assessment levied by the Water Pollution Control Authority is excessive, and the plaintiff is aggrieved by the assessment.
Judgment may enter, accordingly.
Radcliffe, J.