BRIDGE STREET ASSOCIATES *v.* WATER POLLUTION CONTROL AUTHORITY OF THE TOWN OF SUFFIELD (5512)

DALY, NORCOTT and FOTI, Js.

Argued December 10, 1987—decision released July 12, 1988

*Palmer S. McGee, Jr.,* for the appellant (defendant).

*Anthony F. DiFabio,* with whom was *John M. Wyzik,* for the appellee (plaintiff).

NORCOTT, J. The defendant appeals from a judgment of the trial court reducing a sewer assessment levied by the defendant against property of the plaintiff from $120,000 to $33,925. In this appeal, the defendant claims that the trial court erred (1) in finding that the sewer assessment set by the defendant exceeded the special benefit accruing to the plaintiff's property from the availability of sewers, (2) in determining that the amount of special benefit from the sewers serving the plaintiff's property should be measured by the average per acre value of two comparable properties, and (3) in making certain factual conclusions upon which its decision was based. We find no error.

The plaintiff, Bridge Street Associates, is a limited partnership that owns a two and one-half acre parcel of land fronting Bridge Street in Suffield. The defendant, the water pollution control authority, is the duly authorized agency of the town of Suffield that maintains, operates and manages the sewer system of the town. On May 8, 1984, the defendant levied a sewer assessment of $120,000 against the plaintiff's property. The plaintiff appealed the assessment to the Superior Court.

At the hearing before the trial court, the following facts were adduced. Some time between the years of 1964 and 1968, the town of Suffield constructed a sewerage system designed to serve the needs of its citizens. As a means of paying for that sewerage system, the town of Suffield levied an assessment on those properties that were deemed to be specially benefited by the installation of the sewers. One of the properties that was deemed to have been so benefited was a certain tract of property that fronted Bridge Street; a sewer line was constructed to serve that property in 1966. In 1968, the Bridge Street property was assessed in the amount of $1800. At the time of the assessment, the only building on the property was a single family residence.

In the years that followed, the tract of land fronting Bridge Street was subdivided into three smaller lots. One of the lots contained the single family residence that had existed in 1968 while the other two lots were vacant. In 1983, the plaintiff purchased the two vacant lots, which totalled approximately 2.5 acres, for $75,000. After obtaining several zoning changes, the plaintiff undertook construction of a forty unit apartment complex on the heretofore vacant lots. The apartment complex was designed to provide housing for the elderly.

When the apartment complex was more than 50 percent complete, the defendant levied a new assessment on the plaintiff's property in the amount of $120,000.[1] The defendant had determined the amount of the assessment by means of a formula that estimated a $3000 special benefit to each of the plaintiff's forty units.

The first question we must determine is whether the trial court erred in finding that the assessment imposed

---

[1] The amount the plaintiff would have been required to pay was $119,496. This amount represents the $120,000 assessment less $504 the plaintiff had paid on an earlier assessment.

by the defendant exceeded the special benefit to the plaintiff's property by the presence of sewers. We find that the court did not err in so finding.

The defendant clearly had the authority to levy an assessment on the plaintiff's property. General Statutes § 7-249 authorizes municipalities to levy assessments upon property specially benefited by the construction and establishment of a sewerage system.[2] In addition, § 7-249 provides that "[b]enefits to buildings or structures constructed or expanded after the initial assessment may be assessed as if the new or expanded buildings or structures had existed at the time of the initial assessment." Section 7-249 provides further, however, that any assessment levied thereunder may not exceed the special benefit which accrues to the property assessed from the installation or presence of the sewerage system.

"The burden of proving that a special benefit assessment is invalid because it exceeds the particular dollar benefit accruing to the land is on the property owner. As is true in all cases, the plaintiff must prove the allegations of his complaint. The standard of proof is that of a fair preponderance of the evidence. *Faith*

---

[2] General Statutes § 7-249 provides in pertinent part: "At any time after a municipality, by its water pollution control authority, has acquired or constructed, a sewerage system or portion thereof, the water pollution control authority may levy benefit assessments upon the lands and buildings in the municipality which, in its judgment, are especially benefited thereby . . . according to such rule as the water pollution control authority adopts, subject to the right of appeal . . . . The sum of initial and subsequent assessments shall not exceed the special benefit accruing to the property. Such assessment may include a proportionate share of the cost of any part of the sewerage system . . . . In assessing benefits and apportioning the amount to be raised thereby among the properties benefited, the water pollution control authority may give consideration to the area, frontage, grand list valuation and to present or permitted use or classification of benefited properties and to any other relevant factors . . . . No assessment shall be made against any property in excess of the special benefit to accrue to such property . . . ."

*Center, Inc.* v. *Hartford,* 39 Conn. Sup. 142, 154, 473 A.2d 342 (1982), aff'd, 192 Conn. 434, 472 A.2d 16, cert. denied, 469 U.S. 1018, 105 S. Ct. 432, 83 L. Ed. 2d 359 (1984)." *Anderson* v. *Litchfield,* 4 Conn. App. 24, 28, 492 A.2d 210 (1985).

In reviewing assessments of the type imposed under General Statutes § 7-249, our courts have held that a special benefit assessment imposed by a municipality is presumed to be valid and correct. *Katz* v. *West Hartford,* 191 Conn. 594, 602, 469 A.2d 410 (1983). That presumption may be rebutted, however, by the production of sufficient and persuasive contradictory evidence. Id., 603. "Evidence of the fact that the special benefit assessment exceeds the special benefit must have actual persuasive effect, in that it convinces the trier that the nonvalidity of the presumption is as probable as its validity." *Anderson* v. *Litchfield,* supra, 28.

The monetary value of the special benefit conferred upon a piece of property by the presence of a sewerage system must be calculated by the difference between the market value of the realty with and without the sewerage system, even though such a measurement may mean that the cost of the sewerage system cannot be fully recouped by the town. Id., 29; *Carlson-Lang Realty Co.* v. *Windom,* 307 Minn. 368, 240 N.W.2d 517 (1976). Whether an assessment exceeds the special benefit to the property, as measured in this fashion, is a question of fact for the trial court, and its finding as to that fact will not be disturbed unless it is clearly erroneous. *Anderson* v. *Litchfield,* supra.

In this case, the trial court determined that the plaintiff had produced sufficient countervailing evidence to overcome the presumption in favor of the validity of the assessment imposed by the defendant. We agree.

At trial, the defendant produced an expert witness who testified that the special benefit conferred on the

plaintiff's property by the presence of the sewers was greater than the assessment levied by the town. The defendant's expert measured the special benefit conferred on the plaintiff's property by the presence of a sewerage system by taking the difference in the value of the property with sewers and without sewers.

In order to determine the value of the plaintiff's property with sewers, the defendant's expert used a "sales comparison" method of valuation. The defendant's expert selected five properties which he deemed were similar to the plaintiff's property; on each of these properties there had been constructed a multi-family living development. The defendant's expert then determined the selling price of the properties by the number of units they contained. The per unit value of those properties ranged from $4196 to $8333. Taking into consideration the fact that the plaintiff's property was used solely for elderly housing, and therefore was not as valuable as it might otherwise have been, the defendant's expert determined that the per unit value of the property was $5000. Multiplying that figure by the number of units in the plaintiff's apartment complex, the defendant's expert determined the value of the plaintiff's property with sewers to be $200,000.

To determine the value of the property without sewers, the defendant's expert first determined the maximum amount of construction that could have occurred if sewers had not been installed. He determined that, in the absence of sewers, the plaintiff's property could only accommodate three single family dwellings. Analyzing the sales of single family dwellings in the surrounding area, and accounting for the improvements required to make the property suitable for such houses, the defendant's expert concluded that the property was worth $75,000 without sewers. Taking the difference between the value of the property with sewers and without sewers, the defendant's expert

concluded that the special benefit conferred on the plaintiff's property by the sewers was $125,000, a figure greater than the assessment imposed by the defendant.

The plaintiff, however, produced evidence that the assessment on the property exceeded the special benefit derived from the presence of the sewers. Although the plaintiff did not challenge the valuation of the property without sewers, it got the defendant's expert to admit on cross-examination that none of the properties he had used for comparison in valuating the plaintiff's property contained housing for the elderly. The properties used by the defendant's expert in his valuation contained condominiums and standard apartment complexes. Both the defendant's expert and the plaintiff's expert testified that the property used for condominiums and apartment complexes was more valuable per unit than was property used for elderly housing. In addition, the plaintiff produced evidence that because it had received federal loans to build the elderly housing, there were substantial limitations on the use of the Bridge Street property. There was testimony to the effect that it could earn no more than an 8 percent profit on the property and that it was prevented from selling the property for a period of seventeen and one-half years. The plaintiff's expert testified that such restrictions would also limit the per unit value of the property. In addition, the plaintiff's expert called the assessment of $120,000 "outlandish."

Given this evidence, we cannot say that the trial court erred in concluding that the plaintiff had produced sufficient evidence to rebut the presumption of the validity of the defendant's assessment. The evidence produced by the plaintiff was sufficient to allow the court to conclude that the plaintiff's property was worth substantially less than $5000 per unit, and, therefore,

that the difference between the value of the property with sewers and without sewers was not greater than $120,000.

The defendant's second claim is that the trial court erred in determining the amount of the special benefit conferred upon the plaintiff's property by the presence of sewers.

As noted above, the trial court, in determining the amount of the special benefit, rejected the defendant's claim that the plaintiff's property was as valuable per unit as were the other properties the defendant's expert appraised. The trial court noted that if the plaintiff's property were valued at $5000 per unit, the value of the property would be approximately $77,000 per acre. This, the court held, was unreasonable in light of the fact that none of the other properties appraised by the defendant's expert was valued at more than $48,000 per acre.

Thus, the trial court felt it necessary to determine a different measure for the value of the plaintiff's property. In determining the value of the property with sewers, the court noted that the plaintiff's forty unit complex was somewhat smaller than some of the complexes cited by the defendant's expert as comparable properties and somewhat larger than others. The court determined that a per unit evaluation with those properties was unreasonable for the reasons noted above. The court decided, however, that a per acre comparison with some of those other properties would be reasonable. The court took the average per acre value of two of the properties and multiplied that by the 2.5 acres the plaintiff owned.

Our courts have determined that valuation is a matter of fact to be determined by the trier's independent judgment, and the trier may select the method of valuation most appropriate to the case before it. *Cappiello*

v. *Commissioner of Transportation,* 203 Conn. 675, 679–80, 525 A.2d 1348 (1987). In making that judgment, the trier is generally free to accept or reject, in whole or in part, expert testimony by either party, and " ' "has the right to accept so much of the testimony of the experts and the recognized appraisal methods which they employed as he finds applicable; his determination is reviewable only if he misapplies, overlooks, or gives a wrong or improper effect to any test or consideration which it was his duty to regard." ' *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221, 435 A.2d 24 (1980), quoting *Greenfield Development Co.* v. *Wood,* 172 Conn. 446, 451, 374 A.2d 1084 (1977)." *Cappiello* v. *Commissioner of Transportation,* supra, 680. Our function is to determine whether the trial court's decision was clearly erroneous. Practice Book § 4061.

The essence of the defendant's claim is that the trial court erroneously rejected the defense expert's opinions, methods and conclusions with respect to the value of the benefit to the property. The defendant claims in its brief that "[t]he trial court overlooked the very purpose of defendant-appraiser's chart and misapplied and gave a wrongful effect to the data therein, thereby arriving at an erroneous determination of value." We disagree. The trial court fully examined the methodology of the defendant's appraiser and chose not to abide by it because the court found that "[t]he so-called comparable sales of land for multi-unit dwellings submitted in evidence by way of the appraiser's report are hardly comparable in relation to the subject property."

We cannot say from our review of this record that the trial court's conclusions that there was no rational basis for assessing dissimilar properties similarly and that the special benefit to the plaintiff's property was to be based on the average per acre value of two comparable properties in a nearby town of similar size and character was not based on competent evidence before

it. There is nothing in this record to show that the trial court, in developing its own formula for the special benefit assessment, misapplied or overlooked any consideration which it was duty bound to regard. See *Cappiello* v. *Commissioner of Transportation,* supra, 681.

The defendant finally claims that the trial court erred in finding (1) that the sewer assessment of $3000 per unit was based entirely on the defendant's need to pay off the outstanding debt caused by the sewer construction, (2) that the defendant gave no consideration to the possibility that the assessment was excessive, and (3) that the valuation of $77,813 per acre, where sixteen units were to occupy each acre, was not in conformance with the evidence.

"This court cannot find facts or draw conclusions from primary facts found, but can only review such findings to determine whether they could legally, logically and reasonably be found and whether the trial court could thereby conclude as it did." (Citations omitted.) *Nulman's Appeal from Probate,* 13 Conn. App. 811, 812, 537 A.2d 495 (1988). Where the findings of fact of the trial court are supported by the evidence, as in the present appeal, we must support those findings under the "clearly erroneous" test. See Practice Book § 4061; *Kimberly-Clark Corporation* v. *Dubno,* 204 Conn. 137, 155, 527 A.2d 679 (1987).

"Although the presumption of a correct assessment prevailed initially in favor of the town, there was sufficient countervailing competent evidence before the trial court in this case for it to conclude that the plaintiffs had satisfied their burden of persuading it, by a fair preponderance of the evidence, that the special benefit assessment exceeded the special benefit to them." *Anderson* v. *Litchfield,* supra, 29.

There is no error.

In this opinion the other judges concurred.