[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs are the owners of real property located in Branford and known as 244 North Main street (the "Property".) This action is the plaintiffs' appeal from a sewer benefit assessment upon the Property in the amount of $48,992.74. The assessment was made on December 11, 1991.
In 1991, the defendant Town of Branford Sewer Authority undertook the extension of sanitary sewers along Chestnut street and portions of Route 1 (North Main street) in Branford. The total cost of the sewer extension project was $259,604. In CT Page 2644 determining the amount of the sewer benefit assessment for each property which benefited from the sewer extension, the defendant employed a method and a formula which has been used in Branford since the 1960's. Under this method, each single family home is assessed for one unit of cost irrespective of the size, value or number of occupants of the residential property. (For this project, one unit of cost was $3,169.)
The defendant then employed a mathematical formula to determine the number of units which should be assessed against commercial properties such as the plaintiffs'. The formula attempts to determine the number of units which should be assessed against commercial properties by quantifying the differences between the commercial property and an assumed model residential property. The four factors which are included within the formula are the amount or street frontage, the lot area, the building area and a comparison between the tax assessment of the subject property and the average tax assessment of a residential property in the town of Branford. Application of the formula to the Property resulted in the determination that the sewer benefit assessment for the Property should be for 15.46 units, an assessment of $48,992.74 based on the cost of $3,169. per unit.
Section 7-249 of the Connecticut General Statutes limits the amount of any sewer benefit assessment. "The sum of initial and subsequent assessments shall not exceed the special benefit accruing to the property." The plaintiffs contend that the sewer assessment imposed on the Property by the defendant grossly exceeds the special benefit accruing to the Property as a result of the sewer extension.
The Property consists of a three-acre parcel of land improved by two adjoining buildings containing an aggregate of approximately 32,000 square feet of building area. One building contains a retail furniture store and showroom. The second building houses a furniture warehouse. The property is served by a septic system installed in 1988, which includes a future reserve area should it become necessary. The store building contains two lavatories. There are no other sanitary facilities at the Property.
Both real estate appraisers, the plaintiffs' and the defendant's, used the so-called "before and after" test to determine the benefit to the Property from the availability of sewers. This has long been recognized as the appropriate method CT Page 2645 for valuing the benefit to the property.
 The monetary value of the special benefit conferred upon a piece of property by the presence of a sewerage system must be calculated by the difference between the market value of the realty with and without the sewerage system, even though such a measurement may mean that the cost of the sewerage system cannot be fully recouped by the town.
Bridge Street Associates v. Water Pollution Control Authority,15 Conn. App. 140, 144 (1988). (Citations omitted).
The value of the Property without sewers was $1,516,000. according to the plaintiffs' appraiser and $1,660,000. according to the defendant's appraiser. Both appraisers employed the comparable sales approach to value. In their values for the Property with sewers, however, the appraisers differed greatly.
To determine the value of the Property with sewers, the plaintiff's appraiser first analyzed whether sewer availability increased the development potential of the Property. He found that it did not. The Property is developed to its maximum potential right now. The availability of sewers does not give rise to the possibility of a subdivision nor the construction of a larger building nor a more intensive use because additional parking cannot be provided on the site. The plaintiffs' appraiser found that the current use of the Property is its highest and best use and that the septic system at the Property functions well now, using nowhere near the capacity of the system. The plaintiffs' appraiser concluded that for this Property the actual economic benefit of sewer availability lies only in the "peace of mind" which the owner has, knowing that sewers are generally more reliable than septic systems and, that the cost of maintaining and cleaning the septic system can be avoided. He further points out that repairs to the septic system at the Property would be disruptive because the system is located underneath the parking lot, which would need to be excavated. The availability of sewers offers the owner the option of avoiding such disruption and expenses. He also noted that sewer availability will permit the owner of the property to avoid the cost of replacing the septic system after its useful life. He estimated that the discounted present value of system CT Page 2646 replacement would be $2500. Considering all of these factors, the appraiser's opinion was that sewer availability added an additional value of $.50 per square foot of building area, which would result in a sewer assessment of $16,000.
The defendant's appraiser agreed that the current use of the Property is it, highest and best use. He further conceded that the Property is currently developed to its maximum capacity. He nevertheless maintained that sewer availability provides increased flexibility for the development of the Property. Asked on cross-examination to provide an example of a different use for the Property given its physical constraints and under current zoning, the appraiser could not do so. He further admitted that the additional possibilities of property development as he envisioned might not make sense economically.
The defendant's appraiser also resorted to gross generalities, stating that generally sewers add value to property. To support this conclusion, he relied on seven sales of properties in Branford, noting that the mean sales price of the properties with sewers was $112.75 per square foot whereas the mean sales price of the properties without sewers was $75.90 per square foot. To arrive at these figures he simply divided the sales price of each property by the building square footage. The chosen properties vary greatly in size, use, location and nature of improvements, but he made no adjustment to the prices to ensure that the properties were comparable to one another. On cross-examination he admitted that the price variations shown could be explained by actors other than sewers and that these other factors probably would have more impact on the sales price than the availability of sewers.
The appraiser's second attempt to justify a large increase in value attributable to sewers was no more successful. He listed sixteen sales of unimproved land in Cheshire and in Milford and noted which properties had sewers available and which did not. He again calculated a price per acre and noted that the per acre price was higher for the sewered properties by a 45% differential. The sales occurred on various dates from 1984 to 1989 and the size of the parcels varied from a little over one acre to thirty-eight acres. Some of the properties had industrial use, others were office use. No attempt was made to, reconcile the abundant differences in the sales. The appraiser then testified that if adjustments were made to make the sales comparable, the result would be that the availability of sewers CT Page 2647 increased the price by 5%. He never made the adjustments, however. He concluded that the benefit to the Property from sewer availability was 5% of its fair market value without sewers or $83,000.
The data used by the defendant's appraiser does not logically yield any useful information. His conclusion that sewers add a value of 5% is not warranted by any of the data which he actually used. Moreover, his analysis is based on price increases for other properties and does not focus on the "special benefit accruing" to the Property at issue in this case. This approach is not consistent with the statutory requirement.
The court found the plaintiffs' appraiser far more persuasive, his analysis better reasoned and his approach consistent with the statutory requirement. The court finds that the special benefit accruing to the Property from the availability of sewers is $16,000. and judgment is entered, with costs, reducing the plaintiffs' sewer assessment to $16,000.
Christine S. Vertefeuille, Judge