RIDGEFIELD HOUSING AUTHORITY *v.* RIDGEFIELD WATER POLLUTION CONTROL AUTHORITY
(AC 32368)

Lavine, Beach and Dupont, Js.

Argued May 20—officially released September 6, 2011

*Thomas M. Cassone*, with whom, on the brief, were *Randolph T. Lovallo* and *Robert S. Bello*, for the appellant (defendant).

*Michael N. LaVelle*, for the appellee (plaintiff).

*Opinion*

DUPONT, J. The plaintiff, Ridgefield Housing Authority, obtained a judgment granting it a permanent injunction against the defendant, Ridgefield Water Pollution Control Authority, from "seeking any further hookup fee payments from the plaintiff" and an order to "refund to the plaintiff the sewerage payments it has made that are in excess of a fair and reasonable connection fee." The questions to be resolved in the defendant's appeal from the granting of the injunction and the court's order are: (1) whether the plaintiff's action should have been dismissed for lack of subject matter jurisdiction because the plaintiff failed to exhaust its administrative remedies, and (2) whether the court properly issued the permanent injunction and ordered a refund of the fees. We conclude that the trial court had subject matter jurisdiction to grant the permanent injunction and to

issue the order, and we affirm the well considered judgment of the trial court.

The parties stipulated to the relevance of certain facts and exhibits, which the trial court considered. The court also considered testimony, given at a hearing on whether to grant the permanent injunction, of three witnesses, namely, the executive director of the plaintiff, the former first selectman of the town of Ridgefield (town), and the current chairman of the defendant. The plaintiff introduced into evidence statutory histories of municipal sewer systems, the power and authority of water pollution control authorities and PILOT (payment in lieu of taxes) payments by local housing authorities. Also in evidence was a 1976 PILOT agreement between the plaintiff and the town.[1] In its memorandum of decision, the trial court found certain facts, which are undisputed.

Beginning in 1988, the state department of environmental protection ordered the town to expand its sewerage system plant. Legal counsel to the town advised the first selectman concerning different options to raise the necessary capital to recover the costs of the sewer plant expansion. In 1992, the defendant published legal notices and heard public comment regarding various plans to allocate the costs of the loan repayment needed to fund the expansion. On April 8, 1992, the defendant adopted a plan, which provided for a yearly loan repayment of $445,850 to be paid by sewer users, plus $126,000 to be paid by future users, plus $78,150 to be paid from general revenues. Incorporated into this capital cost recovery plan was the fee at issue in this case.

The plaintiff, as a public housing authority, is subject to certain legislation, referred to as PILOT, or "payment

---

[1] The trial court concluded that the agreement bound the town and bound the defendant as a creation of the town. See footnote 3 of this opinion.

in lieu of taxes" statutes; see General Statutes § 8-119gg;[2] which legislation is designed to address the balance between a housing authority's limited revenue stream, the contributions it makes to a community and the need to pay for municipal services. Pursuant to § 8-119gg, instead of "real property taxes, special benefit assessments and sewerage system use charges otherwise payable to a municipality," the plaintiff housing authority "shall pay each year . . . a sum to be determined by the municipality," as limited by the statute. The town entered into a PILOT agreement with the plaintiff executed in 1976, which, pursuant to the statute, provides in relevant part that "the town of Ridgefield has determined that the [plaintiff] shall pay to said municipality in lieu of property taxes, special benefit assessments and sewerage system use charges the sum of ten percent (10%) of the shelter rent paid by tenants for each occupied dwelling unit of the Project and the [plaintiff] agrees to make the [town] such payment in lieu of taxes, assessments and charges."[3] We will refer to this as the "PILOT cap."

[2] General Statutes § 8-119gg provides: "In lieu of real property taxes, special benefit assessments and sewerage system use charges otherwise payable to a municipality, a housing authority approved by the Commissioner of Economic and Community Development for state financial assistance for a low income housing project shall pay each year, to the municipality in which any of its housing projects for low income families are located, a sum to be determined by the municipality with the approval of the Commissioner of Economic and Community Development not in excess of ten per cent of the shelter rent per annum for each occupied dwelling unit in any such housing project; except that the amount of such payment shall not be so limited in any case where funds are made available for such payment by an agency or department of the United States government, but no payment shall exceed the amount of taxes which would be paid on the property were the property not exempt from taxation."

[3] It is not argued in this appeal that the defendant, as the town's water pollution control authority, is not a "municipality" for the purposes of the PILOT statutes or the PILOT agreement. The trial court found that the defendant was a municipality for the purposes of § 8-119gg. The court noted that "[i]t would defeat the purpose and intent of § 8-119gg to control the expenses of a housing authority if the municipality could exempt itself from

The plaintiff constructed four new buildings for low income housing in the town, each with five housing apartment units. The defendant's approval was required before certificates of occupancy of the units could issue. In 2007, the plaintiff applied to the defendant for a "Sewer Hookup/Connection Permit" for each building. The defendant assessed a fee of $5700 per unit, for a total of $114,000 for the twenty unit development. The fee could be paid in a lump sum, or over a ten year period with an interest charge on the declining balance. The plaintiff has paid installments, including interest, to the defendant and has obtained the certificates of occupancy.[4]

The primary dispute between the parties is whether the disputed fee is a "connection fee," which is excluded from the PILOT cap, or whether it is actually a special benefit assessment, which is subject to the PILOT cap. Part of this disagreement arises out of the parties' conflicting interpretation of two statutes, General Statutes §§ 7-255 and 7-249, which pertain to how the defendant may raise revenue. Section 7-255[5] relates to the "fair

---

that statute by operating its sewer operations through a town sewer authority."

[4] The plaintiff has paid to the defendant $25,878 in fees and interest to date in order to obtain certificates of occupancy and to permit families to move into the housing.

[5] General Statutes § 7-255 (a) provides in relevant part: "The water pollution control authority may establish and revise fair and reasonable charges for connection with and for the use of a sewerage system. The owner of property against which any such connection or use charge is levied shall be liable for the payment thereof. Municipally-owned and other tax-exempt property which uses the sewerage system shall be subject to such charges under the same conditions as are the owners of other property, but nothing herein shall be deemed to authorize the levying of any property tax by any municipality against any property exempt by the general statutes from property taxation. No charge for connection with or for the use of a sewerage system shall be established or revised until after a public hearing before the water pollution control authority at which the owner of property against which the charges are to be levied shall have an opportunity to be heard concerning the proposed charges. Notice of the time, place and purpose of such hearing shall be published at least ten days before the date thereof in

and reasonable charges" that a water pollution control authority may establish and revise "for connection with and for the use of a sewerage system." The plaintiff does not claim that it is exempt from paying connection charges. Section 7-249[6] concerns when a water pollution control authority may levy special benefit assessments on lands and buildings that are, in the judgment of the "municipality," "especially benefited" by the construction of a sewerage system. The plaintiff claims that the PILOT cap would apply. The defendant does not dispute that the fee was adopted to pay for 14 percent of the capital project cost of the sewer expansion. It maintains, however, that the fee is a sewer connection fee that was established pursuant to § 7-255 and that, because it was not calculated or levied as a special benefit assessment pursuant to § 7-249, it is not subject to the PILOT cap.[7]

---

a newspaper having a general circulation in the municipality. A copy of the proposed charges shall be on file in the office of the clerk of the municipality and available for inspection by the public for at least ten days before the date of such hearing. When the water pollution control authority has established or revised such charges, it shall file a copy thereof in the office of the clerk of the municipality and, not later than five days after such filing, shall cause the same to be published in a newspaper having a general circulation in the municipality. Such publication shall state the date on which such charges were filed and the time and manner of paying such charges and shall state that any appeals from such charges must be taken within twenty-one days after such filing. . . ."

[6] General Statutes § 7-249 provides in relevant part: "At any time after a municipality, by its water pollution control authority, has acquired or constructed, a sewerage system or portion thereof, the water pollution control authority may levy benefit assessments upon the lands and buildings in the municipality which, in its judgment, are especially benefited thereby, whether they abut on such sewerage system or not, and upon the owners of such land and buildings, according to such rule as the water pollution control authority adopts, subject to the right of appeal as hereinafter provided. Benefits to buildings or structures constructed or expanded after the initial assessment may be assessed as if the new or expanded buildings or structures had existed at the time of the initial assessment. . . ."

[7] In order to issue the permanent injunction, the trial court first addressed whether the defendant was a municipality under § 8-119gg and concluded that the PILOT agreement between the town and the plaintiff binds the defendant, which is a creation of the town.

The trial court concluded that, despite the defendant's label, the "hookup/connection" fee was in actuality an assessment, not a connection fee, and as such, subject to the PILOT cap. The court concluded that the plaintiff was entitled to a permanent injunction enjoining the defendant from seeking further payments of the fee and that the defendant must refund to the plaintiff the sewerage payments made in excess of "a fair and reasonable connection fee." This appeal followed.

I

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

The defendant claims that the plaintiff failed to follow statutory administrative remedies available to it pursuant to §§ 7-255 and 7-246a, and, therefore, that the trial court was without subject matter jurisdiction to consider the plaintiff's cause of action. Without such subject matter jurisdiction, the defendant argues that the plaintiff's action should have been dismissed.[8] In essence, the defendant is arguing that the plaintiff's action cannot be a substitute for administrative appeals as provided by the statutes.

As a threshold matter, we address our standard of review. "We have long held that because [a] determination regarding a trial court's subject matter jurisdiction

---

[8] The defendant did not move to dismiss the plaintiff's complaint on the ground that the plaintiff failed to exhaust its administrative remedies. It appears that the defendant advanced its first argument regarding § 7-255 in its trial brief and raises the second regarding § 7-246a for the first time on appeal. The question, however, of whether a trial court had subject matter jurisdiction to render judgment may be raised at any time, including on appeal. *Ajadi* v. *Commissioner of Correction*, 280 Conn. 514, 532–33, 911 A.2d 712 (2006). A challenge to subject matter jurisdiction is to be decided on the basis of the complaint alone, or the complaint supplemented by undisputed facts, or, if the facts are disputed, on the basis of an evidentiary hearing to establish jurisdictional facts. *Conboy* v. *State*, 292 Conn. 642, 651–52, 974 A.2d 669 (2009). In the present case, the facts relating to subject matter jurisdiction are undisputed.

is a question of law, our review is plenary. . . . Moreover, [i]t is a fundamental rule that a court may raise and review the issue of subject matter jurisdiction at any time. . . . Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . ." (Internal quotation marks omitted.) *Bloomfield* v. *United Electrical, Radio & Machine Workers of America, Connecticut Independent Police Union, Local 14*, 285 Conn. 278, 286, 939 A.2d 561 (2008).

"It is a settled principle of administrative law that, if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter. . . . This requirement reflects the legislative intent that such issues be handled in the first instance by local administrative officials in order to provide aggrieved persons with full and adequate administrative relief, and to give the reviewing court the benefit of the local board's judgment." (Citations omitted; internal quotation marks omitted.) *O & G Industries, Inc.* v. *Planning & Zoning Commission*, 232 Conn. 419, 425, 655 A.2d 1121 (1995).

A

General Statutes § 7-255

The defendant first claims that the fee was adopted pursuant to the strictures of § 7-255 (a) and that the statute provides an administrative remedy to aggrieved parties, which the plaintiff failed to follow. The defendant maintains that none of the narrow exceptions to the exhaustion requirement apply here. The plaintiff argues that, even if this claim is reviewable as one that implicates subject matter jurisdiction, it is plain that the plaintiff had no administrative remedy under § 7-255. We conclude that § 7-255 did not deprive the trial

court of subject matter jurisdiction over the plaintiff's claim.

The following additional facts are relevant to the defendant's claim. In 1992, pursuant to § 7-255, the defendant published legal notices and heard public comment regarding various plans to allocate the costs of the loan repayment of the state mandated expansion of the sewer treatment plant. On April 8, 1992, the defendant adopted its plan to pay for the annual capital cost of $650,000 for the sewer plant expansion. On April 20, 1992, a copy of the charges that the defendant adopted was filed in the office of the town clerk. On April 23, 1992, legal notice was published according to the requirements of § 7-255.

Section 7-255 (a) allows a water pollution control authority such as the defendant to establish "fair and reasonable charges for connection with and for the use of a sewerage system" and provides that no such charge can be established without proper adherence to the notice and public hearing requirements set forth. Section 7-255 (a) further provides that an appeal must be taken within twenty-one days from the filing of sewer connection charges in the office of the town clerk. The essence of the defendant's claim is that, because the plaintiff was a landowner in the town in 1992, it can be charged with notice of the fee. It therefore failed to exhaust its administrative remedy because it did not challenge the imposition of the $5700 charge for "future hook ups" as outlined in the schedule of charges within twenty-one days of April 20, 1992, the date that a copy of the charges adopted by the defendant were filed in the office of the town clerk.[9]

---

[9] General Statutes § 7-255 (a) provides in relevant part: "When the water pollution control authority has established or revised such charges, it shall file a copy thereof in the office of the clerk of the municipality . . . . [A]ny appeals from such charges must be taken within twenty-one days after such filing. . . . The water pollution control authority may establish minimum charges for connection with and for the use of a sewerage system. Any person aggrieved by any charge for connection with or for the use of a

We do not need to address the defendant's arguments concerning the exceptions to the exhaustion of administrative remedies requirement because we conclude that the requirement does not apply to this case. Cf. *Forest Walk, LLC* v. *Water Pollution Control Authority*, 291 Conn. 271, 283, 968 A.2d 345 (2009) (noting that parties seeking to appeal from "denials of applications for sewer connections or extensions had to exhaust certain administrative remedies prior to appeal" before legislature enacted § 7-246a), citing *BRT General Corp.* v. *Water Pollution Control Authority*, 265 Conn. 114, 116–27, 826 A.2d 1109 (2003); *River Bend Associates, Inc.* v. *Water Pollution Control Authority*, 262 Conn. 84, 86–87, 809 A.2d 492 (2002).

Insofar as the defendant's claim can be read as an argument concerning the *timeliness* of the plaintiff's challenge to the fee, we are not persuaded that the twenty-one day appeal period of § 7-255 (a) barred the trial court from considering the plaintiff's claim in this case. The purpose of the exhaustion requirement is to further the legislative intent that certain issues be addressed first by local administrative officials. This purpose would not be served by dismissing the plaintiff's action because the plaintiff's complaint does not evince a dispute over the schedule of fees that the defendant adopted in 1992. Rather, the plaintiff's complaint evinces a disagreement between the parties concerning the applicability of the PILOT cap to the fee assessed attendant to the "hookup/connection" of the plaintiff's property to the town's sewerage system. The plaintiff first applied for those permits in 2007. The disagreement did not exist in 1992.[10] Accordingly, we

sewerage system may appeal to the superior court for the judicial district wherein the municipality is located and shall bring any such appeal to a return day of said court not less than twelve or more than thirty days after service thereof. The judgment of the court shall be final."

[10] General Statutes § 7-255 (a) provides that aggrieved persons should appeal to the Superior Court but does not provide for an appeal to an administrative body or official. At oral argument before this court, the

conclude that § 7-255 did not deprive the trial court of subject matter jurisdiction over the plaintiff's claim.

B

General Statutes § 7-246a

The defendant claims that the plaintiff failed to exhaust the remedies arguably available to it pursuant to § 7-246a.[11] The plaintiff responds that, by its terms, § 7-246a does not apply to the present case. We conclude that § 7-246a did not deprive the trial court of subject matter jurisdiction over the plaintiff's claim.

The following additional facts are relevant to the defendant's claim. On March 13, 2007, in a letter to the

defendant addressed the anomaly inherent in its position that the plaintiff failed to exhaust its remedy pursuant to this section, which was an appeal to the Superior Court, by asserting that the same court, the Superior Court in the present action did not have jurisdiction over the subject matter. The defendant's position was that the distinction between an administrative appeal and a direct appeal is, in the latter, it is the court, and not the agency, which hears live testimony and makes determinations of credibility. Whether or not this is true, it is well established that "when a party has a statutory right of appeal from the decision of an administrative agency, he may not, instead of appealing, bring an independent action to test the very issue which the appeal was designed to test." *Carpenter* v. *Planning & Zoning Commission*, 176 Conn. 581, 598, 409 A.2d 1029 (1979). We conclude that this independent action does not test the very issue that the statutory appeal was designed to test because this action concerns the applicability of the PILOT agreement and statutes to the fee charged.

[11] General Statutes § 7-246a provides: "(a) Whenever an application or request is made to a water pollution control authority or sewer district for (1) a determination of the adequacy of sewer capacity related to a proposed use of land, (2) approval to hook up to a sewer system at the expense of the applicant, or (3) approval of any other proposal for wastewater treatment or disposal at the expense of the applicant, the water pollution control authority or sewer district shall make a decision on such application or request within sixty-five days from the date of receipt, as defined in subsection (c) of section 8-7d, of such application or request. The applicant may consent to one or more extensions of such period, provided the total of such extensions shall not exceed sixty-five days.

"(b) Notwithstanding any other provision of the general statutes, an appeal may be taken from an action of a water pollution control agency or sewer district pursuant to subsection (a) of this section in accordance with section 8-8."

defendant, the plaintiff claimed that the fees assessed on its applications for "Sewer Hookup/Connection Permit[s]" did not apply to it because of the PILOT cap. The defendant, at its regular meeting, disagreed and found that the fees were due. No appeal to the Superior Court was taken from that decision pursuant to § 7-246a, which incorporates the familiar fifteen day administrative appeal procedure outlined in General Statutes § 8-8 (b).[12]

We note that when a water pollution control authority performs its administrative functions, such as considering an application for sewer service, "a reviewing court's standard of review of the [authority's] action is limited to whether it was illegal, arbitrary or in abuse of [its] discretion." (Internal quotation marks omitted.) *Forest Walk, LLC* v. *Water Pollution Control Authority*, supra, 291 Conn. 286. In the present case, the trial court was presented with a dispute over whether the PILOT cap applied to the "connection/hookup" payment sought by the defendant. This legal question of statutory interpretation is not one to which this court needs to accord deference to an agency. See id. (court defers to water pollution control authority on "credibility of witnesses and the determinations of issues of fact"). Moreover, § 7-246a (a), by its terms, applies to applications or requests for, inter alia, "approval to hook up to a sewer system at the expense of the applicant . . . ." The defendant concedes in its principal brief that the plaintiff's request was "to hook up to the [town] sewer system at a cost lower than [that] paid by other

[12] General Statutes § 8-8 (b) provides in relevant part: "[A]ny person aggrieved by any decision of a board . . . may take an appeal to the superior court for the judicial district in which the municipality is located . . . . The appeal shall be commenced by service of process . . . within fifteen days from the date that notice of the decision was published as required by the general statutes. The appeal shall be returned to court in the same manner and within the same period of time as prescribed for civil actions brought to that court."

users . . . ." For the foregoing reasons, we conclude that the application of § 7-246a did not deprive the trial court of subject matter jurisdiction over the plaintiff's claim.

Having concluded that the trial court had subject matter jurisdiction to consider the merits of the plaintiff's claims, we next discuss the disposition of the defendant's appeal.

## II

## MERITS OF THE JUDGMENT

We set forth the principles of law that guide our analysis and our standard of review of the trial court's judgment. The plaintiff commenced this action seeking a permanent injunction enjoining the defendant from collecting the connection fee and a "permanent injunction requiring [the defendant] to refund all payments made by the [plaintiff] in excess of a fair and reasonable connection fee," which relief the court granted. Injunctive relief is warranted when the party seeking it meets the burden of alleging and proving irreparable harm and lack of an adequate remedy at law. *Brennan* v. *Brennan Associates*, 293 Conn. 60, 86, 977 A.2d 107 (2009). The granting of an injunction rests within the sound discretion of the court and the court's ruling can be reviewed "only for the purpose of determining whether the decision was based on an erroneous statement of law or an abuse of discretion." (Internal quotation marks omitted.) Id., 86–87. To the extent that the claims in this appeal require us to construe the relevant statutes, we note that the construction of a statute is a question of law subject to plenary review. See id., 87. "In examining the meaning of a particular statute, we are guided by fundamental principles of statutory construction. See General Statutes § 1-2z;[13] see also *Testa*

[13] General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering

v. *Geressy*, 286 Conn. 291, 308, 943 A.2d 1075 (2008) ([w]hen construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature . . .)." (Internal quotation marks omitted.) *Shortell* v. *Cavanagh*, 300 Conn. 383, 386–87, 15 A.3d 1042 (2011).

The primary dispute between the parties is whether the trial court properly determined that the disputed fee was a special benefit assessment, which the plaintiff would be exempt from paying pursuant to the PILOT cap, and, accordingly, whether the court properly issued the permanent injunction and ordered repayment to the plaintiff of any payment that it had made to the defendant in excess of a fair and reasonable connection fee. The defendant claims that the disputed fee properly was adopted pursuant to § 7-255 and that the plaintiff is not exempt from paying "fair and reasonable charges for connection with and for the use of a sewerage system. . . ." General Statutes § 7-255 (a). The plaintiff's argument is that the defendant's method of financing its sewerage expansion in 1992 was in contravention of the sewer system statutes. Specifically, the plaintiff maintains that § 7-249, the special benefit assessment statute, is the *exclusive* method that the defendant can use to recoup the cost of financing the sewage plant expansion, and that the defendant has "avoided" the statutory scheme by adopting the disputed fee in the manner that it did. The defendant, in response, argues that nothing in the case law or statutory scheme *prohibits* a municipality from using sewer connection charges to aid it in financing the expansion of a sewage treatment plant.

The defendant argues that the trial court improperly characterized the fee as a special benefit assessment.

such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

It maintains that the fee is not akin to a special benefit assessment because, when it was adopted, no regard was given to the special benefit that accrued to any property in the town, including the plaintiff's property, nor would any property be charged the fee if it did not actually connect to the system. In response, the plaintiff maintains that there are indicia that the disputed fee is really a special benefit assessment by another name. For example, it is undisputed that the fee was imposed to recover 14 percent of the capital costs associated with the sewage treatment plant, and the defendant allows installment payments and charges interest on the declining balance.

The determinative issue presented to this court is much narrower than the claims asserted by the parties. The question to be resolved by us is whether the PILOT agreement between the plaintiff and the town and the PILOT statute, § 8-119gg, exempted the plaintiff from paying the disputed fee.[14] If the plaintiff is exempt, it is entitled to the injunctive relief ordered and is also entitled to the refund ordered by the trial court. The PILOT agreement, which incorporates the language of § 8-119gg, provides that the plaintiff shall pay the PILOT cap "in lieu of property taxes, special benefit assessments and sewerage system use charges . . . ." At issue is the meaning and application of the term "special benefit assessment" in the context of the PILOT statute and agreement.

"Special assessments for local improvements, although bottomed on the taxing power, are based on the principle of special benefit to property. It is a local assessment imposed occasionally, as required, upon a limited class of persons interested in a local improvement; who are assumed to be benefitted by the improvement to the extent of the assessment . . . . *Bridgeport*

---

[14] We must examine the character of the fee in order to make that determination, but we need not address all of the arguments made by the parties.

v. *New York & N.H. R. Co.*, 36 Conn. 255, 262–63 (1869). The demand for the special contribution is justified by the fact that those who are to make it, while they are made to bear the cost of the public work, are supposed to suffer no pecuniary loss thereby, because their property is increased in value to an amount at least equal to the sum they are required to pay." (Internal quotation marks omitted.) *Shoreline Care Ltd. Partnership* v. *North Branford*, 231 Conn. 344, 350–51, 650 A.2d 142 (1994). Our Supreme Court has concluded that a property can be specially benefited by a sewerage system, and therefore subject to an assessment, even if it does not actually connect to the system. See id., 351–52. The measure of the special benefit is the increase in the market value of the property because of the improvement. Id., 351.

It is accepted that, because special benefit assessments levied may not exceed the special benefit that accrues to the property from the installation or presence of a sewerage system, the use of a special benefit assessment to fund the improvement may mean that the cost of the sewerage system cannot be fully recouped by the town. Id., 352; *Bridge Street Associates* v. *Water Pollution Control Authority*, 15 Conn. App. 140, 144, 543 A.2d 1351 (1988); see also *Carlson-Lang Realty Co.* v. *Windom*, 307 Minn. 368, 373, 240 N.W.2d 517 (1976) ("[t]he legal limit on special assessments is that they may not exceed the increase in market value of the assessed property, and as a practical matter this means many improvements may not be fully assessed but must be funded through some other means, such as general property taxes"). It follows, as posited by the defendant, that this shortfall must come from "somewhere." In *Cyr* v. *Coventry*, 216 Conn. 436, 441, 582 A.2d 452 (1990), our Supreme Court, in dicta, noted that a municipality has available to it "numerous means of funding [a]

sewer project" other than levying special benefit assessments, citing, inter alia, "§ 7-255 (a) (connection and use charges) . . . ."[15]

We accept the defendant's premise that the town had available a variety of means of funding a sewer expansion. These included increasing real property taxes and building debt service into the connection fee and use charges. It does not necessarily follow, however, that how the defendant chose to structure its debt controls whether the plaintiff, as a public housing authority, is liable to pay for the funding. The PILOT statute and PILOT agreement exempt the plaintiff from certain charges otherwise payable to the town. "[L]ocal housing authorities do not operate for a profit and . . . to minimize their expenses and enable them to provide moderate rental housing within the financial reach of families of low income . . . a reduction in their property tax burdens (including special benefit assessments and sewerage system use charges) was necessary while still balancing the municipality's need for revenue to provide services to the authority." (Citation omitted; internal quotation marks omitted.) See Opinions, Conn. Atty. Gen. No. 84-128 (November 15, 1984).

Costs of sewer expansion can be recouped in a number of ways, including special benefit assessments and general property tax revenue, both of which are subject to the PILOT cap. As found by the trial court, one of the proposed methods of funding the expansion was a "yearly loan repayment . . . from general tax revenues," which was rejected. The fee was adopted pursuant to § 7-255, which governs "connection fees" and which fees are not expressly subject to the PILOT cap. It is undisputed that the $5700 per unit fee was adopted

---

[15] The court also cited "[General Statutes] § 7-264 (borrow upon credit of municipality), and [General Statutes] § 7-273a (service charges) . . . ." *Cyr* v. *Coventry*, supra, 216 Conn. 441.

to pay for 14 percent of the capital cost of the sewer expansion and that the fee is only charged to new users of the system when they connect. The defendant's position is that the method it chose to recoup its costs controls the question of whether the plaintiff must pay the fee. We are not persuaded.

The clear purpose of the disputed fee was to shift some of the burden of paying for the upgrade to the system onto new users of the system, by which the defendant and the town avoided the need to assess special benefits and to raise property taxes. Because the plaintiff seeks equitable relief, we are not constrained to conclude that the title or name that the defendant applies to the fee and the method by which it adopted the fee govern the outcome of this dispute. It would be unjust to allow the defendant to circumvent the PILOT cap by denominating as "connection fees" sums that would otherwise be subject to the cap.

The court correctly concluded that the purpose of § 8-119gg, which applies to low income housing projects such as the one operated by the plaintiff, is to control the expenses of municipal housing authorities by putting a cap on certain payments, such as special benefit assessments, property taxes and sewage usage charges. We also agree with the trial court that the name that the defendant applies to the fee does not override the statutory protection afforded to the plaintiff pursuant to § 8-119gg. This is particularly true when the defendant has admitted that the "connection fee" was not imposed simply to connect to the sewerage system, but to repay the capital costs incurred as a result of the increased usage by the plaintiff. We agree with the trial court that this is the type of fee that the legislature intended to exempt the plaintiff from paying.

The judgment is affirmed.

In this opinion the other judges concurred.